## Horton v. Horton.
## Horton et al. v. Same.

April 27, 1943.

S. Jewell Rice for appellant, Fred Horton.

Strother Kiser for appellee, Lillie Horton.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

The two above appeals are outgrowths of a divorce suit which was begun in 1934, and has twice been before this court. Horton v. Horton, 276 Ky. 104, 122 S. W. (2d) 793; Horton v. Horton, 287 Ky. 586, 154 S. W. (2d) 550, in both of which Fred Horton was appellant. Reference to the two opinions will give history, and it is only necessary here to state that the controversy was begun by the husband seeking a divorce from the wife, and the wife seeking like relief, with the result as shown by our first opinion, the husband being granted an absolute divorce.

In the first opinion the questions of the custody of the child, and some claims by the wife as to personal property were reserved, though temporary arrangement for the custody of the infant daughter La Fern Horton was provided. On the second appeal the involved property rights were determined, as was the contested question of the husband's liability for maintenance of the infant while in the custody of the mother, under a visitation arrangement; the custody of the child, over protest of both parties, was placed in Sayre College. This last opinion was rendered on September 10, 1941, and on November 10th, the child meanwhile remaining in the College under the chancellor's decree, with provisions for timely visitations to each parent, we upheld the lower court in directing that the child should remain in the school since it appeared for her best interests.

In June, 1942, the mother moved the court to allow the daughter to be permitted to remain with each parent for a time during vacation. The parties agreed to an amicable arrangement, which it appears has been carried out. On August 27, 1942, the father moved the court to set aside former orders giving custody to the College, and that he be awarded custody, on the grounds that since the order he had acquired a residence in a splendid residential district, with sufficient room to give the daughter a separate room. He avowed ability to provide for her all advantages of education and surroundings in a religious atmosphere. Further that the arrangement whereunder the child stays part of the time with him and part with the mother, and the rest of the time at the school was unsatisfactory, and not to the best interest of the child. He set out these grounds in an

affidavit, and in addition stated that he had remarried and his wife and he were greatly interested in the welfare of the child. He also expressed great dissatisfaction "with some of the conditions under which the daughter is required to live at Sayre College," and the belief that her proper training would be better developed in his home.

The mother objected, saying that there had been no change in conditions since the former order; that if there was to be a change she should have the custody, though admitting that any change at the present would not be conducive to the welfare of the daughter. The daughter, who at the time had reached the age of thirteen years, said that if a change be made she would prefer to go with the mother, but that since she had been in the school for some time her wish was to remain there.

Later the father filed an amended petition (presumably to the original pleading) in which he reiterated what was said in his affidavit in support of motion, and charged that the mother was not a proper person to have custody of the daughter, and that the school did not and could not afford proper control and moral influence over the daughter. He said that he had "noted tendencies in the daughter which caused him great anxiety," and which if not properly corrected might produce regrettable results.

The court on hearing ruled that the testimony should be confined to the issue as to whether or not Sayre College is a proper institution for the training and education of the daughter. No objection was made to this ruling. The testimony, except in one instance, was narrowed to that issue; a sister of the first wife of Mr. Horton alone testifying that his home was conventional, and that he was properly fitted for the care of the daughter. In his effort to demonstrate that the College was not a desirable place for the daughter, Mr. Horton testified that at various times during visits of the daughter in his home, she sometimes wrote letters, chiefly to girl friends. Some of these she would leave lying around or place in her books. One was from a boy whom Mr. Horton did not know, nor did he make effort to ascertain who he was. These letters were filed as part of his deposition, and we have observed them. It would serve no useful purpose to incorporate them. Several spoke of the young daughter's boy friend, but not in

any way to attribute anything more than what might be termed "puppy love;" others to girl friends were of no alarming tendency. There is only one which would tend to cause alarm concerning the actions of the girl. This was not signed by her or addressed to any person, but was, if written by her, apparently intended for a girl friend.

Other evidence introduced undertaking to demonstrate that the school was not a proper place for the girl is of little value; we might say of no value, since based on the theory that at all events, no matter what the school or the home, a boarding school was not a fit place for any young girl.

A perusal of the evidence would indicate to any fair mind that no matter what the home offered for the girl, the father lacked those elements of parenthood which would manifest him to be a proper person to have the care of the girl. We say this because he admits that at various times he secured the exhibited notes, never saying a word about any one of them to the school authorities or to the child. He saved them up and passed them to the court.

It takes no philosopher, or one peculiarly equipped in measuring human relations or reactions, to conclude that there were two proper courses open to the father; one to have a heart-to-heart talk with the child, or a talk with those in charge of the College, giving its officers and teachers an opportunity for correction. However this may be, since the chancellor circumscribed the issue as stated, and assuming that being a resident of Lexington, and a man of discernment, he had some knowledge of the standing of the College, we are concluded that his solution of the question was correct.

There is filed in this court a motion by Mrs. Horton, in which it is asked that we make allowance to her counsel for services to be rendered her in this court in the first case above styled (last appeal) involving the custody of the child. Since we have decided the controversial question, without the necessity of filing a brief in her behalf, this motion should not prevail.

In the second case the former wife and her counsel are appellants and Mr. Horton appellee. It involves a claim of Mrs. Horton for an allowance to counsel for services rendered her in this court on the second appeal.

The first opinion, 276 Ky. 104, 122 S. W. (2d) 793, was rendered in November, 1938. As stated the only question then decided was the one of divorce. The issues as to property rights and custody of the child were reserved. The second opinion was rendered in September, 1941, and determined the questions of allowance to the child during the time she was in custody of the mother, certain rights in property claimed by the wife, and the custody of the infant child. It will be noted that the controversy has been litigated about eight or nine years. Following the preparation and entry of orders to conform to our second opinion, on November 13, 1941, Mrs. Horton and counsel moved the court to make an allowance to be fixed and taxed as costs, for services rendered by counsel in this court on the second appeal, to be fixed at $500, asserting that this sum was reasonable for the services rendered.

In support of these motions affidavit was filed setting out the services rendered in preparing cross appeal on behalf of Mrs. Horton, and in contesting Mr. Horton's appeal on the several questions involved, including intermittent motions, rules, etc., in the case while pending on appeal, and preparation of orders following our second opinion.

It is pointed out that by oversight on the part of the circuit clerk, he failed to incorporate in the record various affidavits of members of the bar bearing upon the question of reasonable fee for counsel's services in the circuit court. It was shown that while Mr. Horton has a considerable estate, Mrs. Horton was then and is now without funds or property. Insofar as the meager record on this question shows, there was neither objection nor counter-affidavits filed on this motion. The chancellor overruled the motion, refused to allow any sum, and granted appeal. The order stated: ''My position in overruling this motion is, in my opinion, sustained by the case of Horton v. Horton, 287 Ky. 586, 154 S. W. (2d) 550.'' In that opinion we refused to disturb the chancellor's conclusion in respect of an allowance for services rendered up to the time of judgment in that court. We quote from the opinion, as follows:

''It is true that a divorced wife is not entitled to an allowance for the conduct of litigation subsequently instituted by her against her divorced husband, but we are unable to determine from the

record presented what portion, if any, of the allowance was for services rendered appellee after the case had been returned [we presume following first opinion] to the Circuit Court. Moreover, the subsequent litigation was rendered necessary by the declination of the Court to direct a final judgment on the former appeal. Unquestionably, appellee's counsel rendered able and difficult services throughout the litigation, but since the affidavits on which the allowance was based are not before us, and appellant has already been subjected to heavy expense, we are not inclined to disturb the Chancellor's finding." [287 Ky. 586, 154 S. W. (2d) 552.]

The language quoted does not justify the conclusion suggested by the chancellor, if it be assumed that our opinion on the subject precluded him from making some allowance for services rendered by counsel in this court. The language quoted has caused a closer survey of the former record, and we find that the commissioner stated in his report that ten or more reputable attorneys of the local bar had expressed the opinion that services rendered in the second case (fees in the first case not being involved) justified an allowance of $1,200, which was reduced to $500 by the chancellor, who also adverted to the fact that the attorneys had recommended a greater sum.

We have taken the trouble to examine the records brought up on both appeals, and it is clear from that survey that the services for which compensation is sought were rendered following the return, including services rendered in this court on the second appeal. We pointed out in the second opinion that subsequent litigation was rendered necessary by the failure of the court to direct final judgment on the former (first) appeal.

It is true as stated, that the rule is that a divorced wife is not entitled to an allowance for the conduct of litigation instituted by her against her divorced husband. Campbell v. Campbell, 240 Ky. 442, 41 S. W. (2d) 1093, and cases therein cited, but this case does not fall in the same category. An allowance, if one be deemed proper, may be made for services rendered in this court under authority of Riggins v. Riggins, 192 Ky. 500, 234 S. W. 5; Hertel v. Hertel, 202 Ky. 422, 259 S. W. 1035. Here, while the husband was granted divorce, she had the right to litigate on the second hearing property

rights, as well as the important feature of the custody and maintenance of the child. That we might under circumstances make an allowance to counsel for services rendered in this court, where the wife is without means (though she may have been at fault), is manifested by Krieger v. Krieger, 194 Ky. 812, 241 S. W. 828; Littleton v. Littleton, 229 Ky. 353, 17 S. W. (2d) 204.

While our rule is that the chancellor's conclusion should be and it is given great weight, we are inclined to believe that in this instance his judgment was influenced by his construction of our last opinion, in which we did not take into consideration the services rendered in this court on appeal, nor such as were rendered, though not of great volume, upon the return of the case.

From a survey of the records before us, and fully realizing that Mr. Horton has been subjected to heavy expenses (mostly by reason of matters initiated by him), we are of the opinion that an allowance of $200 is reasonable; therefore the judgment rendered on Mrs. Horton's motion, made in the circuit court, is reversed with directions to make the allowance as indicated to be taxed as cost. Mrs. Horton's motion made here, for an allowance for services to be rendered on this last appeal is overruled. Fred Horton v. Lillie Horton is affirmed.