552

**James B. WILKERSON, Appellant,**

v.

**Betty Jean WILKERSON (Cochran),
Appellee.**

Court of Appeals of Kentucky.

May 13, 1960.

Roy N. Vance, Paducah, for appellant.

Dee L. McNeil, Hickman, for appellee.

MILLIKEN, Judge.

This appeal involves two questions—an order changing the custody of a five and a half year old boy, and the propriety of assessing the wife's attorney's fee in the custody proceedings against her former husband.

The husband obtained an uncontested divorce in January, 1955, and was awarded custody of the child, Jimmy Glenn Wilkerson, at the time. The ground of the divorce was mental cruelty. There appears to be no serious question now about the personal fitness of either parent to have custody of Jimmy. However, both parents have remarried and the father now has a child by his second wife who, incidentally, testified she wants to keep Jimmy. Jimmy's mother (appellee) has no children by her second marriage, is working in the Chicago area where she and her new husband live, and both she and he declared that she will quit outside work and devote herself to the home if she is awarded custody of Jimmy. The income of each of the men approximates $500 a month. The chancellor transferred the custody of Jimmy to his mother for the school year with the father to get custody during the summer months, which is practically the reverse of the arrangement ordered at the time of the divorce of the child's parents. At the time of the divorce there appears to have been a question whether the mother had any place to take the child, and the chancellor largely abided by an agreement between the parents as to the custody of the child.

While there were instances of irritation between the parents on their respective visits to see the child, we do not believe that aspect of the case is what persuaded the chancellor to transfer most of the custody to the mother, a nonresident. When the child's parents remarried with the mother gaining a home suitable for the

youngster, that certainly was a change of condition which the chancellor could consider a basis for changing the custody if he deemed it wise to do so. Before making his ruling, the chancellor let the mother have the child for the summers of 1958 and 1959. When she brought him back into the state after the summer of 1959, the chancellor notified the parties he was ready to rule on the motion for a change of custody and ruled for the mother. He had gone to the trouble to have the mother's home in Chicago investigated before making his ruling. The chancellor has seen the parties and is in a much better position normally to determine what is best for the child than are the members of this Court. Certainly, awarding a child of such tender years to his mother is usual if she is a fit person. We believe he was motivated by consideration of the child's welfare (KRS 403.070) and acted with sound discretion; consequently, we will not disturb his conclusions on this aspect of the case.

When the chancellor assessed the payment of $250 counsel fee of the mother's attorney against the father in this proceeding on her motion for a transfer to her of the custody of Jimmy, he again displeased the father to the extent that the father has appealed to us for relief. Our research has failed to disclose a Kentucky case similar to this one in which the assessment against a former husband for payment of a former wife's attorney's fees was in issue in an out-and-out custody proceeding. However, in two cases this Court denied an allowance from the father for the mother's attorney's fees for services rendered where the issue of custody was the sole issue on appeal in an action commenced below for both divorce and custody. Wills v. Wills, 1916, 168 Ky. 35, 181 S.W. 619; Thomas v. Thomas, 1870, 70 Ky. 665. In refusing to assess a fee against the husbands in these cases, the Court relied on the fact that the litigants were no longer husband and wife at the time of the appeal, and the practical

consideration that custody of the child might be a matter of dispute for years to come (see KRS 403.070)—hence allowing the wife's attorneys to be paid by the husband could produce a method of harassment.

In two recent appeals involving both custody and support of the child, this Court did award the mothers an allowance for attorneys' fees. Wyatt v. Webb, Ky., 1958, 317 S.W.2d 883; Ginter v. Ginter, 1947, 305 Ky. 513, 204 S.W.2d 596. In these cases the Court did not allude to KRS 453.120, which allows assessment of costs against the husband in actions "for alimony and divorce unless the wife is in fault and has ample estate of her own," or the Wills and Thomas cases, above, but, rather, based its decisions on the premise that the child had had a benefit conferred on it, in the latter case by having the support payments increased and in the former by recovering past due, unpaid support payments, and hence the employment of an attorney was a legitimate and necessary expense and the father of the child should be charged.

The decisions for other states are not entirely agreed as to the power of courts to allow counsel fees to a former wife upon application, after an absolute divorce, to modify an order as to support or custody of a child or children; they have allowed such an assessment against the husband on a number of theories such as reasonable interpretation of a statute, the inherent general power of equity, and that on the theory that an action for custody is just a continuation of the action for divorce, and in other instances they have given no reason at all. 17 Am.Jur., Divorce and Separation, Sec. 641, p. 716; 15 A.L.R.2d 1272 et seq.

However, in the case at bar, no opprobrium attaches to either parent and the mother appears to be in as good financial condition as the father, so we do not believe the chancellor was justified in this instance, even if he had the power, in charging the father with the costs of the

mother's counsel fee, and we direct that the father be relieved of that responsibility.

The judgment is affirmed as to the award of custody and reversed as to the counsel fee.