Patrick H. MOLLOY, Appellant,

v.

Shelia H. MOLLOY, Appellee.

Shelia H. MOLLOY et al., Appellants,

v.

Patrick H. MOLLOY, Appellee.

Court of Appeals of Kentucky.

Nov. 20, 1970.

**16**

Gess, Mattingly, Saunier & Atchison, Lexington, for Patrick H. Molloy.

Stoll, Keenon & Park, Miller, Griffin & Marks, Lexington, for Shelia H. Molloy, C. Gibson Downing and Harry B. Miller, Jr.

C. Gibson Downing, Stoll, Keenon & Park, Harry B. Miller, Jr., Miller, Griffin & Marks, Lexington, for Shelia H. Molloy.

CLAY, Commissioner.

This is a child custody proceeding. It arose on a motion of the appellant father to change the custody which formerly had been granted the mother. The Chancellor denied his motion.

At the outset we are confronted with a motion to dismiss the appeal and a motion to strike portions of appellant's reply brief. Both motions are overruled.

■ The parties were divorced September, 6, 1968. By agreement, approved by the court, the mother was given custody of the parties' three infant children, the oldest of whom at that time was seven years of age. Approximately seven months later the father filed his motion for change of custody on the ground that changed conditions had made the mother an unfit person. The hearing and presentation of evidence on this motion consumed five days and one night, and all of the evidence was heard by the Chancellor.

The principal basis for the charge of unfitness on the part of the mother was a particular immoral indiscretion. We do not believe it necessary to detail the facts shown at this hearing. Suffice it to say that on the principal charge relating to the mother's involvement with another man, it was clearly established and admitted that she committed a series of moral wrongs and had been woefully indiscreet. We have carefully reviewed, as did the Chancellor, the nature and extent of a relationship which contravened socially accepted standards of moral conduct. It is the father's contention that this conduct was so reprehensible that almost as a matter of course it rendered the mother an unfit person.

There was an attempt to show another unrelated indiscretion, and it is contended that the home atmosphere was so contaminated that it was not in the best interests of the children to have them remain with the mother. There was also proof tending to show neglect on her part, particularly *prior* to the divorce.

With respect to the principal indiscretion to which we have alluded, it cannot be condoned. The question with which we are confronted, and with which the Chancellor was confronted is whether it had such significant implications as to require a change of custody. The problem narrows itself to whether the environmental situation was such as to adversely affect the welfare of the children. Perhaps it was for a period of time, but its termination by the time of the hearing is a matter to be considered. The Chancellor must take an overall view of what effect past events will have on the children's future welfare.

There was substantial evidence that the mother, after the divorce, was capably and affectionately fulfilling her parental duties. Particularly noted was the improvement in the conduct and the mental attitude of one of the children.

The father has failed to persuade us that the Chancellor abused his discretion in not changing the custody of the children. There are several cases in which we have upheld judgments awarding custody to the mother even though she has been guilty of immoral conduct. Kelien v. Kelien, Ky., 273 S.W.2d 360 (1954); Wilcox v. Wilcox, Ky., 287 S.W.2d 622 (1955); Jones v. Sutton, Ky., 388 S.W.2d 596 (1965); Morris v. Morris, Ky., 439 S.W.2d 317 (1969). We have recently reviewed those cases and the governing principles in Dudgeon v. Dudgeon, Ky., 458 S.W.2d 159. Therein we said (page 160):

"We have reviewed our case law concerning the issue presented by this appeal and find that it is consistent in stating the obvious proposition that courts, both trial and appellate, are presented with no problem of greater complexity than the delicate and awesome responsibility of adjudicating the custody of children. We find it apparently inconsistent in reaching appellate results when one particular circumstance is overemphasized in reviewing an award of custody as compared with other relevant circumstances. We do find it consistent however, in its advocacy of the general proposition that the issue is best determined by the trial judge and that a very clear and substantial showing of manifest error on his part is required before an appellate court should undertake to substitute its judgment for his. This attitude is influenced, and properly so, by the system which vests trial judges with continuing supervision so that they may by process of reexamination achieve the best result practicable within the limitations of the system and within the limitations inherently created by the tragic occurrence itself as it affects the lives of the innocent children."

Further, on page 161:

"It is true, as appellant points out, that many of our former opinions discussing this problem of the sexually indiscreet mother appear to place emphasis on whether she marries the man with whom she has been indiscreet. We think the emphasis is misplaced. It may very well be relevant to a determination of whether or not she is promiscuous, but so far as the determination of custody is concerned, she might provide a better environment for the child in conceivable situations if she concluded not to marry the man than in those instances where marriage takes place. This is but another illustration of what we think is inescapable: We cannot create cubicles labeled 'promiscuity,' 'marriage to the man,' or 'nonmarriage to the man,' and then in computer-like fashion attempt to cram the fate of innocent children into one cubicle or the other to reach a result. The issue must be resolved by careful and conscientious trial judges who weigh all relevant factors; make a difficult decision; then are available and vigilant to supervise the result. This is simply the best we can do with the means available. Appellate review must confine itself in changing determination of the custody of infants in divorce cases to those situations where there is a clear and substantial showing that the manifest error was committed."

The facts in the Dudgeon case were quite similar to those in this one. There were many other factors which deserved due consideration, not the least of which was the possible disruption of the only home the children had ever known if the change was made. Appellant calls our attention to the recent case of Hamilton v. Hamilton, Ky., 458 S.W.2d 451 (1970), wherein we affirmed a judgment awarding custody to the father in a divorce proceeding. It is urged that the principles therein set forth require a change of custody. On the contrary, that opinion recognizes the responsibility of the Chancellor to make a value judgment, without according any one factor controlling significance, in determining which parent will provide the better home surroundings and will give the children the most attentive and suitable care. Here again we upheld the Chancellor's exercise of discretion.

We are unable to find on this record an abuse of discretion or a manifest error, and the part of the judgment determining custody must be affirmed.

There is a consolidated appeal by the mother and her lawyers from so much of the judgment as declines to award her attorney fees incurred in this proceeding. The parties have thoroughly briefed this question and have called our attention to many cases which appear to leave the law somewhat in a state of confusion.[1] However, the parties in their briefs finally reached complete agreement that the matter of the allowance of attorney fees to the wife in a post-divorce custody proceeding is a discretionary matter with the Chancellor. This was our holding in the recent case of Barnes v. Barnes, Ky., 458 S.W.2d 772 (1970). There we held that a circuit court has both inherent power and implied power under KRS 403.070 to make such an allowance.

The Chancellor did not have before him the Barnes opinion. He indicated he could not justify the allowance under KRS 453.120, which relates to actions for alimony and divorce, although he did emphasize that since the mother had an ample estate of her own this was a significant consideration. However, from his remarks when considering this question, it appears to us the Chancellor was not convinced he had the authority to make such allowance. Thus we cannot say that he exercised his discretion when denying the mother an attorney's fee. We therefore find it necessary to reverse this portion of the judgment. Such reversal is not to be construed as indicating any opinion as to whether an attorney's fee, in whole or in part, should be allowed. The court should take into consideration all pertinent matters, including those referred to in Barnes.

The judgment is affirmed in part and reversed in part for proceedings consistent with this opinion.

All concur.

---

1. Thomas v. Thomas, 70 Ky. (7 Bush) 665; 4 Ky.Op. 176 (1870); Wills v. Wills, 168 Ky. 35, 181 S.W. 619 (1916); Horton v. Horton, 294 Ky. 374, 171 S.W. 2d 424 (1943); Henry v. Henry, 301 Ky. 523, 192 S.W.2d 486 (1946); Ginter v. Ginter, 305 Ky. 513, 204 S.W.2d 596 (1947); Lathey v. Lathey, Ky., 305 S.W. 2d 920 (1957); Wyatt v. Webb, Ky., 317 S.W.2d 883 (1958); Wilkerson v. Wilkerson, Ky., 335 S.W.2d 552 (1960); Ward v. Ward, Ky., 407 S.W.2d 709 (1966).