Terry M. Jayroe, Plaintiff-Appellee, v. Ruby Inez Jayroe, Defendant-Appellant.

## Gen. No. 10,607.

Fourth District.

April 19, 1965.

Wilson, Dyar, Houchen & McDonald, of Decatur (Vernon H. Houchen, of counsel), for appellant.

Armstrong, Winters, Prince & Tenney, of Decatur (Harold F. Tenney, of counsel), for appellee.

CRAVEN, J.

This is an appeal from a decree of the circuit court of Macon County modifying the custody provisions of a decree of divorce.

The record discloses that the parties were married in May of 1956; they lived together as husband and wife until 1961, at which time the defendant left the plaintiff and moved to Topeka, Kansas. Three daughters born of the marriage, then aged four, three and two years, were taken to Topeka by the defendant.

In September of 1962 the plaintiff obtained a divorce from the defendant on the grounds of desertion, and the decree provided that the defendant should have custody and control of the daughters subject to reasonable visitation by the plaintiff. Support payments in the amount of $150 per month were provided by the decree.

The defendant and the children lived in Topeka until August of 1963, at which time she and the children moved to Palm Desert, California. The defendant was employed there, as well as in Topeka, as a school teacher; her earnings were some $1,000 per year more in California. She supported herself and the children from the salary and the support-money payments.

While living in Palm Desert defendant met an unmarried lawyer, ultimately had sexual relations with him and became pregnant.

In February of 1964 she discontinued her employment and took the children to Kansas City, Missouri, to the home of her mother.

Some few weeks later the defendant moved to Louisville, Kentucky, taking the children. The record discloses that the purpose of the last move was to get away from everyone she knew, and to stay away, un-

til such time as the child was born and its placement for adoption completed. In Louisville the defendant and the children lived in a single-bedroom furnished apartment for some two weeks, then moved to a larger furnished apartment. While in Louisville the defendant and children were supported by the support payments, delayed income from her salary and some assistance from her mother. On one occasion there was an advance from the Travelers Aid. The evidence is clear that the living quarters in Louisville were not pretentious but were in keeping with the then limited income.

The children were adequately clothed, were enrolled in school and attended church services with regularity; indeed, the plaintiff or his wife testified the children were well-behaved, had a good outlook on life, and that their religious training had been good.

On May 20, 1964, plaintiff went to Louisville and removed the children to his home in Decatur, and a week later filed a petition to modify the custody provisions of the decree. On June 6, 1964, the defendant took two of the children from Decatur and returned them to Kansas City, Missouri. The plaintiff, who had arrived in Kansas City before the defendant, again took the two children and returned them to his residence in Decatur where he was living with his second wife.

After a hearing on the petition to modify, the circuit court awarded custody of the children to the plaintiff. No specific findings of fact are recited in the modification order other than that there has been a material change in circumstance of the parties and that the custody is awarded to the plaintiff.

The only question presented by this appeal is whether the trial court abused the discretion with which it is clothed in custody matters, in modifying the origi-

nal decree and awarding custody of the children to the plaintiff father.

■■ In our examination into this question, we are met with certain well-established and, indeed, uncontroverted rules: first, the decree of divorce awarding the custody to the defendant constituted a final adjudication of the conditions existing at the time of the decree; further, the decree will not be modified unless new conditions are shown to have arisen, and then only if such new conditions dictate a change in custody based upon a consideration of the welfare of the children. Nye v. Nye, 411 Ill 408, 105 NE2d 300; Brown v. Brown, 13 Ill App2d 56, 140 NE2d 528; Wade v. Wade, 345 Ill App 170, 102 NE2d 356.

The changes of conditions asserted in this case as the grounds for the modification of custody are that the mother was to have an illegitimate child, that she was "a dishonored fugitive" and that on one occasion when the plaintiff removed the children from Louisville they were alleged to be dirty and not receiving proper care.

■ Giving birth to an illegitimate child by a mother who has custody of minor children by a dissolved marriage is not *of itself* a basis for changing the custody. As the Supreme Court said in the case of Nye v. Nye, 411 Ill 408, at page 415, 105 NE2d 300:

"Where the mother is able to care for her minor daughter and is not shown to lack the proper attributes of good motherhood, past misconduct, where the evidence indicates no probable future misconduct, should not be a basis for denying custody to the mother. To do so would be not only to punish the mother for her past misconduct, but, more important, would punish the child by denying her a mother's care and guidance. It is not the purpose of this court, nor of any court, to so

82

punish an innocent child. The guiding star is and must be, at all times, the best interest of the child. . . ."

In this case, as in the Nye case, there is no evidence of probable future misconduct nor is there any evidence that the mother was anything other than an affectionate, dutiful mother giving proper care and guidance to the minor children. The one occasion where the children were removed from the play-yard in an allegedly unclean condition does not sustain, on examination, an allegation of improper care. The evidence is rather clear that the children were removed from Louisville at a time when they were engaged in outdoor play and their uncleanliness was nothing other than that which is usual and customary when children indulge their propensities to get dirty while playing.

The alleged nomadic life of the mother does not indicate to us that she was a "dishonored fugitive" but rather it indicates that she was remorseful about her pregnant condition and sought to minimize social ostracism by removing herself from familiar surroundings. Such pursuit may have made her an itinerant, but nothing more.

Both parties, under the strain and stress of a contest for the custody of three minor children, pursued conduct lacking in maturity and based upon the emotions of the moment. It is self-evident that the welfare of the children suffers when they are used as but a rope in the emotional tug of war between the divorced parents. That welfare suffers when the parties use self-help rather than judicial processes to resolve their differences. However understandable, the conduct must be viewed as detrimental to the welfare of the children.

In the Nye case there is a general review of the legal philosophy in custody cases. It is there stated

as a general rule that custody by the mother of minor children, and particularly daughters, is to be preferred if she is a fit and proper person to raise the child. It is further there stated that compelling evidence must be presented proving the mother to be an unfit person, to cause the custody of a minor daughter to be denied her.

■ After a careful review of the record, we are satisfied that the modification of the decree as to custody was in error as a matter of law. For the reasons here indicated, the judgment of the circuit court is reversed.

Reversed.

SMITH, P. J. and TRAPP, J., concur.