231 So.2d 144

**Betty ROWE (Underwood)**

v.

**Frank ROWE.**

**8 Div. 5.**

Court of Civil Appeals of Alabama.

Jan. 28, 1970.

Murray W. Beasley, Tuscumbia, for appellant.

Sherman B. Powell, Decatur, for appellee.

BRADLEY, Judge.

The parties to this controversy were divorced on September 4, 1968, after about eleven years of married life.

The appellant here was the complainant in the divorce action and was granted said divorce on the ground of cruelty and was awarded the custody of the two minor children, both girls, aged nine and five.

The court, at the time of the divorce decree, also awarded $50.00 per month to the mother for the support of the two children, and prescribed certain periods for visitation of the children by the father. At this time the appellant was living in Lauderdale County, Alabama and appellee was living in Morgan County, Alabama.

About two months after the divorce decree, and at one of the regularly scheduled visit periods, appellee discovered that appellant had moved to Tuscaloosa County, Alabama, taking with her the two children, and he was thereby prevented from visiting with them.

Two or three weeks after this abortive visit to see his children, the appellee filed a petition in the Circuit Court of Morgan County, Alabama in Equity, seeking to have the appellant held in contempt of said court for removing the children from Lauderdale County, Alabama to an unknown address in Tuscaloosa County, Alabama, and asking that the original divorce decree be modified so as to give him custody of the two children.

The matter was heard before the trial court, and it rendered a decree holding that the appellant was not in contempt of said court, but that the decree should be modified so as to permit the custody of the older child to be with the mother and the custody of the younger child to be with the father. Also, the support payments were reduced from $50.00 to $35.00 a month, and there were certain very specific directions given to both parties concerning visitation and temporary custody of the children.

From this decree the appellant appeals to this court.

The appellant filed five assignments of error, four of which were directed to the modification of the original divorce decree and one related to the admission of certain alleged illegal testimony.

We will consider first the question of whether the trial court, in modifying the original divorce decree, properly applied the law to the facts in this particular proceeding; but before we undertake this aspect of the case, we would point out that the evidence surrounding the question of whether the appellant had attempted to acquaint the appellee with the whereabouts of the children was in conflict and the trial court resolved it by deciding that the appellant was not in contempt of the court for failure to apprise appellee of the children's whereabouts, and, we think, rightfully so.

■■ In a proceeding to modify a divorce decree respecting custody, each case must rest upon its own facts and circumstances, with the principle always in mind that the welfare of the child is of paramount importance. Featherston v. Featherston, 271 Ala. 238, 123 So.2d 120. Also, where a child of tender years requires the care and attention that only a mother can give, the court will give the mother custody rather than the father, unless for some good reason the mother is unfit for the trust. Goldman v. Hicks, 241 Ala. 80, 1 So.2d 18.

At the hearing on the petition for modification, the appellee-father testified that the appellant-mother was a fit person to care for the two children, both girls of tender years.

However, he did attempt to show that the appellant had perjured herself at the trial of the original divorce action; and to support this contention, he had read into the record of this proceeding a portion of the testimony taken at the original trial, and

we will reproduce a portion of it here so as to enable us to have a better understanding of this aspect of the controversy:

"Q. Do you know personally Robert Underwood?

"A. I do not know him personally.

"Q. Have you ever talked to him?

"A. No.

"Q. Have you ever seen him?

"A. Yes.

"Q. Where?

"A. Over at a friend's house.

"Q. Who was the friend?

"A. Claudine Springer.

"Q. Well, has she now divorced her husband she was married to then and married to a State Trooper Bell and living down in Pickens County, Alabama?

"A. I don't know.

"Q. She is your first cousin?

"A. No.

"Q. Is she related to you?

"A. No.

"Q. She is not your cousin?

"A. No.

"Q. She was a good friend of yours?

"A. Yes, sir.

"Q. You and her sort of buddy-buddied together?

"A. Sometimes.

"Q. You went out together?

"A. Out, no.

\* \* \* \* \* \*

"Q. (BY MR. POWELL) Now, are you telling this Court under oath Mrs. Rowe that you don't even know a State Trooper by the name of Robert Underwood?

"A. I said I met him over at a friend's house, I didn't say I didn't know him.

"Q. What did you say?

"A. I said I had met him. Frank was with me when I met him too.

"Q. When did you meet him?

"A. Over at my girlfriend's house.

"Q. Well, when—

"A. It was back in August—last August.

"Q. August of last year?

"A. Yes.

"Q. You didn't know him before that?

"A. No.

"Q. You didn't know him when you lived at Falkville?

"A. No, I did not.

"Q. Never had seen him, never did talk to him?

"A. No.

"Q. Did you ever come in an automobile down here to Flint City, down here between here and the top of the hill and get out and stand beside the highway patrol car in which he was seated and carry on a conversation?

"A. No.

"Q. Didn't carry on a conversation with him?

"A. I did not.

"Q. That's not true, is that right?

"A. I did not talk to anybody, I have never, I have never been stopped.

"Q. Well, did you know Claudine Springer's husband, first husband?

"A. Yes, I went to school with him, sure did.

"Q. Were you related to him?

"A. No.

"Q. Just good friends?

"A. Yes.

"Q. When was she and her husband divorced?

"A. I don't know, I haven't seen her.

"Q. You haven't seen her?

"A. No.

"Q. Since when?

"A. Since I left Decatur.

"Q. Since last November?

"A. Yes.

"Q. Where were you living last November when you went to the Tri-Cities Area —in Decatur?

"A. Yes.

"Q. Did she live in Decatur during all the time that you and Frank lived in Decatur?

"A. She was living here before we moved to Decatur.

"Q. Do you know whether or not she is now married to State Trooper Bell, a state trooper by the name of Bell?

"A. I do not know.

"Q. You haven't had any contact with her since you left Decatur?

"A. No.

"Q. Do you know a state trooper by the name of Bell?

"A. Yes.

"Q. Did you meet him at the same time you met Robert Underwood?

"A. Yes, and I also met Bell's wife.

"Q. All right, tell this Court whether or not you and Claudine Springer have ever been out with Patrolman Bell and Patrolman Underwood?

"A. We have not.

"Q. That's not true?

"A. That is not true, I have not.

"Q. Under no circumstances and under no case?

"A. No."

■ Obviously the appellee was aware of the principle that anyone seeking a modification of a previous divorce decree as it concerns the custody of children must allege and prove some change of condition or other substantial reason for altering a previous divorce decree. McBride v. McBride, 268 Ala. 619, 109 So.2d 718; or that facts existing at the time of the original decree, but undisclosed at that time, have now been discovered and revealed. Sparks v. Sparks, 249 Ala. 352, 31 So.2d 313.

■ A careful reading of the testimony of appellant at the original trial will clearly and unequivocally show that she met a man by the name of Underwood at a friend's house while in the company of her former husband, the appellee, and she had no further contact with him prior to the divorce decree on September 4, 1968. Furthermore, this is the only bit of evidence bearing on the issue of subsequently discovered evidence which could alter or modify a divorce decree. In our opinion the evidence wholly fails to support this theory of the modification proceeding. Moreover, we would point out again that the appellee testified in this proceeding that the appellant was a fit mother to care for these minor children.

We think it material to a decision of this case to examine other aspects of the trial court's decree.

■ The Supreme Court of Alabama has ruled that the effects of a remarriage can be shown along with other factors to indicate a material change of condition since the divorce. McBride v. McBride, supra.

■ A careful reading of the record failed to disclose evidence of a substantial change in conditions after appellant remarried, and particularly as this remarriage affected the welfare of the children. There was testimony by the former mother-in-law of appellant that when her husband brought the two children back from Tuscaloosa, they were thinly clad and had with them old clothes, although they were clean. However, she stated she had made clothes for the children all of their lives. Also, one of the children had a rash on one leg. The mother-in-law stated the child

admitted being carried to a doctor in Tuscaloosa. She also said she had carried the child to a doctor in Decatur and the rash was slow to respond to the medication.

It was shown by the evidence that at the time the appellant's former father-in-law picked up the children in Tuscaloosa, the new husband cursed him in the presence of the children.

We do not consider the above evidence sufficient to warrant a modification.

■ Would a change in residence warrant a modification? After reading Snellings v. Snellings, 272 Ala. 254, 130 So.2d 363, we are inclined to the view that for such a change in residence to call for a modification, all of the surrounding circumstances must show an adverse effect upon the children. There was no such evidence produced at the hearing.

■ Inasmuch as the burden was on the petitioner in the proceeding for modification of the divorce decree to show such a change in conditions as to warrant modification of the decree, Wood v. Wood, 276 Ala. 90, 159 So.2d 448, we conclude there was insufficient evidence presented to the trial court by the appellee to sustain the burden which had been cast upon him. Therefore, on this basis alone, he should fail in his efforts to modify the decree.

■ But, it is, we think, helpful in determining the proper relief to be awarded in this case, to examine appellee's ability to care for one or both of these children.

The evidence was without dispute that appellee was under the care of psychiatrists for a mental condition and that he suffered from an ulcerated stomach; that he lived with his mother and father, both of whom were seventy years of age. It was also shown that appellee had a steady job, but no evidence was taken as to his wages.

It was further shown that appellee's father always went to get the children when they were to visit, except the one time when the children were not in Lauderdale County, Alabama. Also, it was his father who went with the deputy sheriff to Tuscaloosa to get the children after the court in Morgan County had awarded temporary custody to him pending the outcome of the hearing on the petition for modification.

It would appear from these facts that grave questions could arise as to the fitness and ability of appellee to care for these two little girls, now aged ten and six.

Therefore, we conclude that the trial court erred in modifying the original decree of divorce by awarding custody of the youngest child, Pamela, to the appellee, and in reducing the support payments from $50.00 to $35.00.

■ By assignment of error and argument in brief, appellant contends that the trial court committed reversible error in admitting certain testimony at the trial. We think it would be helpful to set out a portion of that testimony here.

During the direct examination of Mrs. Minnie Rowe, the mother of the appellee, the following occurred:

"Q. Did they go to Sunday School with you?

"A. When they would be at home, she usually took off to Mamas but they would go during the week.

"Q. When their Mama was there did Betty frequent the church with the children?

"A. No, she didn't, she joined the church one time but she wouldn't be baptised—

"MR. BEASLEY: We object to that as immaterial, irrelevant and illegal, going behind the decree of the court.

"THE COURT: As I understand—since its been answered we'll let it go in—I don't want to comment on it.

"MR. BEASLEY: We except."

"Q. And did you at any time voluntarily or in any manner violate any order of this court's decree, so far as you know?

"MR. POWELL: We object to that.
"THE COURT: Let it go in under the equity rule.

"A. No."

Appellant contends that the trial court overruled objections to the above two questions and thereby permitted illegal evidence to go in the record, and negated the presumption that the court will only consider legal evidence.

We do not agree with appellant that the trial court overruled objections to these two questions.

In the first question, the witness answered the question before counsel could object, and the court then said, "since it has been answered we'll let it go in—I don't want to comment on it." It strikes us that the court was saying since she has answered the question, there is nothing I can do about it, the answer is before the court; however, I won't attempt to rule on it because I will only consider legal evidence in drawing the decree.

In the case of Brooks v. Everett, 271 Ala. 354, 124 So.2d 105, the Supreme Court said where answers were made prior to objection, and no motion was made to exclude answer, nothing was presented for review.

Here, answer was made prior to objection, and no motion to exclude answer was made. Also, the court specifically said he did not "want to comment on it." Indicating, that he wished to abide by the equity rule which required him to consider only legal evidence in deciding the case where he did not make specific rulings on the admissibility of evidence. Title 7, Section 372(1), Code of Alabama 1940, as amended.

The same conclusion applies to the second question objected to by appellant, for there the trial court said: "Let it go in under the equity rule."

It must be construed that he was saying, I am not ruling on your specific objection, but letting the answer go into the record, and in making my decision will only consider legal evidence contained in that record.

No error was committed by the trial court in allowing the answers to these two questions to go into the record.

Appellant, in brief, insinuated that because the trial judge and counsel for appellee were brothers, and because appellant and counsel for appellant were nonresidents of Morgan County, Alabama, his client, the appellant, had not been accorded a fair trial.

We have carefully examined this record and come to the conclusion that the trial judge was sincerely concerned not only with preserving the integrity of his court's decrees, but also with protecting the welfare of these two small girls. We are also convinced that he was trying to do justice as between the parties and as between the offspring of that former marriage, and, we think the remarks made by appellant's counsel are without basis in fact, and should not have been made. A legal brief is no place for a lawyer to engage in personalities.

The decree appealed from, is affirmed in part and reversed in part, with remandment for purpose of entering a decree awarding custody of the minor child, Pamela, to the appellant, and for fixing the support payments at $50.00 a month for both children.

Affirmed in part, reversed in part, and remanded with instructions.