316 So.2d 210

**Linda GOULD**

**v.**

**Arthur GOULD.**

**Civ. 462.**

Court of Civil Appeals of Alabama.

April 30, 1975.

Rehearing Denied May 28, 1975.

380

William C. McCain, Tuscaloosa, for appellee.

A. K. Callahan and George W. Nichols, Jr., Tuscaloosa, for appellant.

HOLMES, Judge.

This is an appeal by appellant-mother from a decree of the Circuit Court of Tuscaloosa County modifying an earlier decree and awarding custody of the parties' two minor children to the appellee-father.

While there is some slight conflict in the testimony, a close examination of the record reveals the following:

The parties were divorced on October 19, 1973, on appellant's petition alleging incompatibility of temperament. To this petition appellee filed an answer and waiver.

In parts pertinent to this appeal, the judge granted appellant's petition for divorce on the ground of incompatibility and also awarded to her the care and custody of the two minor children. Additionally, the court ordered that appellee pay $40 a month child support payments. Appellee was given certain visitation rights.

After the divorce, for a brief period of time, appellant continued to live in a trailer formerly occupied by her and appellee and the two children. She then moved into an apartment with another lady and her child.

On March 14, 1974, appellant filed a petition with the circuit court requesting that she be allowed to move the children out of the State of Alabama and into Florida. The reasons given in the petition for the request was due to economic conditions and health conditions of herself and the children. The court entered an *ex parte* order on March 14, 1974, allowing her to take the children out of state.

Appellant testified that she gave both her mother and her ex-husband an address at which she could be reached. Appellee testified that he made no effort to contact the children prior to his and Mrs. Rawlins' (maternal grandmother and co-petitioner of appellee) trip down in late April or early May.

After moving to Florida, appellant and the children lived in what appears to be various locales for a short period. At some point in time, appellant met the man she later married and, apparently, shortly thereafter moved into this man's home. He testified that he then moved in with his mother.

Some time in what appears to have been early May of 1974, the appellees visited appellant and the children in Winter Garden, Florida. An argument ensued after their arrival during which appellee-father used profanity in front of not only his own children, but also those of appellant's later-to-be husband. While there, the appellees also discovered some men's garments in the bedroom and a guitar and boots in the living room. Appellee-mother-in-law testified that her daughter told her that she and the man were married. Appellant testified that she said they were going to be.

Appellant allowed the appellees to take the children to Disney World during this visit, but asked that they be returned the next day in time for church. The appellees complied with this request. On their return, the appellees encountered the husband-to-be who apparently admonished appellee-father for his profanity in front of the children. The appellees then left Florida for Alabama.

Following their return to Alabama, the appellees filed a petition for modification on May 16, 1974, alleging that appellant was "living under adulterous conditions" and "failing to provide the proper moral home and atmosphere" and, accordingly, seeking a custody modification.

We might note at this point that, while the maternal grandmother is a co-appellee in this case, it appears from her testimony that her interest in the case is a concern

for the appellant and the children being so far from home. And she gives no testimony or indication otherwise as to appellant's fitness as a mother.

The evidence further indicates that appellant and the man she is accused of living with were married on July 11, 1974, shortly before the hearing. They live in a four-bedroom house inhabitated by the appellant, her husband, her two children and his two children.

Appellee-mother-in-law, who testified she would take care of the children "some", lives in a one-bedroom home and works in the evenings from 2 o'clock in the afternoon until 11 o'clock at night.

Appellee-father also lives in a one-bedroom dwelling. Additionally, he is behind in his child support payments. Since the weekly payments of $40 were to begin on October 22, 1973, he has made only nine payments through the courts and an additional five payments, totaling $150, directly to appellant. Appellee testified he was on strike during some of this period, although he did find work elsewhere for a period during the strike. The evidence further shows that appellee-father now makes $197.05 a week and "draws" about $143 a week.

After hearing all the evidence *ore tenus*, the trial judge held that "the safety and emotional well-being" of the children required a change in custody from the appellant to appellee-father. Additionally, the court found the appellee-father $828.50 in arrears in child support.

Thus, the issue presented to this court is whether the trial judge erred to reversal in awarding custody of the children to the father.

At the outset, we make notice of the following time honored principles.

■ First, it is well established that where testimony is taken *ore tenus*, the finding by the trial court has the weight of a jury verdict and such finding will not be disturbed unless plainly and palpably wrong and contrary to the great weight of the evidence. *Blankenship v. Blankenship*, 266 Ala. 182, 94 So.2d 743.

■ Second, divorce decree providing for custody of a minor child will not be modified unless changed conditions are shown which justify such modification. *Snead v. Snead*, 279 Ala. 344, 185 So.2d 135.

■ Third, in proceeding to modify a divorce decree respecting custody, each case must rest on its own facts and circumstances with the principle always in mind that the welfare of the child is of paramount importance. *Featherston v. Featherston*, 271 Ala. 238, 123 So.2d 120.

■ Fourth, where the children are of tender years, the mother is generally considered better fitted to exercise custody unless she is unfit for the trust. *Lansdell v. Snoddy*, 269 Ala. 344, 113 So.2d 151.

■ And, finally, it is held in this state that a party seeking modification of a child custody provision of a divorce decree must allege and show some change of conditions or other substantial reason for modification. *Perez v. Hester*, 272 Ala. 564, 133 So.2d 199.

Applying these well-established principles to the facts before us, we are compelled to reverse the finding of the learned trial judge for, despite the presumption of correctness attendant in his decree, we find no charged circumstances to justify a modification in this instance.

As we perceive appellee's petition for modification and arguments as set out in brief, it appears their contentions are based on two grounds.

■ One ground is that, in making its ruling, the trial court properly considered the adverse effects of appellant's numerous changes in residence in determining if there had been a material change of cir-

cumstances affecting the welfare and best interest of the children.

In *Rowe v. Rowe,* 45 Ala.App. 367, 231 So.2d 144, this court held that for a change in residence to warrant a modification all of the surrounding circumstances must show an adverse effect upon the child.

There is no evidence of any adverse effect upon the children in this case as a result of the move. In fact, from the record there appears to be much evidence the other way.

Appellant testified that following the divorce the oldest child was emotionally disturbed and upset and that one reason for the move to Florida was that she felt he might be helped if he were gotten "out of the atmosphere and away from the pressure." She further testified she felt these emotional problems were caused by the appellee-father's attitude and actions toward the child and that since the move the child's emotional condition has improved.

Appellant also testified that the children's health is good, that they eat well, and that they appeared happy to her; that the oldest child is doing better in school and is not as nervous as before, nor does he cry as much; and that in her opinion the children are getting along better.

Appellant testified further that they live in a four-bedroom home; that her new husband loves the children and "takes up a lot of time with them and does things with them", and that the children seem to love him; that she and her new husband go with the children to church each Sunday; and that she feels she has the children in a good environment.

Mr. Edgar, appellant's new husband, testified that the children seem to be getting along all right; that they appear happy; and that the oldest child's emotional problems have improved. He also testified that the children were being provided a good home, furnished with everything they need, and are accompanied to church each Sunday by him and appellant.

Further, there is the testimony of appellee-maternal grandmother that the children were found to be "O.K." in their home in Florida and "were all right."

Thus, we find no adverse effects caused by the move.

The second main contention raised by appellee is that appellant failed to provide a proper moral environment in which to raise the children. This is based apparently on alleged indiscreet conduct between appellant and her present husband, prior to their marriage. Appellee further contends that even the subsequent marriage did not purge the effects of the immoral environment.

This court has carefully scrutinized the evidence as presented in the record and the best we can say is that any evidence concerning appellant's alleged indiscreet conduct is, at best inconclusive. There is the testimony of the appellee-maternal grandmother that she found men's clothing in the bedroom and a guitar and boots in the living room. There is also the testimony of appellee-father that it appeared appellant and Mr. Edgar lived together.

The only other testimony indicating an indiscreet conduct is that of the parties' eight year old child. It does appear this child testified that they (appellant and children) moved in with Mr. Edgar. However, his testimony is, at best, garbled and contradictory.

Even assuming indiscreet conduct on the part of the appellant this court is not prepared to say, under the facts of this case, that this, *ipso facto*, is enough to result in a custody change.

The moral unfitness of a mother sufficient to deprive her of custody must be such as to have a direct bearing upon the welfare of her child. A parent will not be denied custody for every act of indiscretion or immorality. *Gibson v. Gibson,* 196 Or. 198, 247 P.2d 757; *Goldson v. Goldson,* 192 Or. 611, 236 P.2d 314; *Jayroe*

*v. Jayroe*, 58 Ill.App.2d 79, 206 N.E.2d 266; *Lock v. Lutz*, 128 Ill.App.2d 476, 262 N.E. 2d 256; *Molloy v. Molloy*, 460 S.W.2d 15, (Ky); *CC v. CC*, 37 A.D.2d 657, 322 N. Y.S.2d 388; *McDaniel v. McDaniel*, 16 Ohio Misc. 32, 240 N.E.2d 916.

It has also been held that a wife's misconduct with a man with whom she later marries does not of itself make her an improper person to retain custody. *Nye v. Nye*, 343 Ill.App. 477, 99 N.E.2d 574; *Overstreet v. Overstreet*, La.App., 244 So.2d 313.

It has also been held that a woman is not unfit because she lived with her subsequent husband as man and wife before they were legally married. *Templeton v. Templeton*, 254 Wis. 92, 35 N.W.2d 223.

 This court finds itself in agreement, in this instance, with these pronouncements from these various other states. The ultimate question is what is in the best interest of the child and, while indiscreet conduct is a factor to consider, it is not necessarily in and of itself enough to require a change in custody.

 Summarizing: The evidence indicates that appellee-father lives in a one-bedroom apartment and that he is over $800 in arrearage on his child support payments, and that he did not attempt to get in touch with his children for nearly two months following their move to Florida. Appellee maternal grandmother also lives in a one-bedroom home and works each day from 2:00 P.M. to 11:00 P.M.

The children reside in a four-bedroom home in Florida. The testimony indicates they are well taken care of and attend church each Sunday. Additionally, the oldest child's emotional condition has improved since the move.

In view of this and other aforementioned evidence, we do not find that any indiscretion of the appellant, under these facts, is such as to warrant a change in custody.

We, accordingly, find no changed circumstances such as to warrant a change in the custody decree.

Reversed and remanded.

WRIGHT, P. J., and BRADLEY, J., concur.