399 So.2d 846 (1980)
Saundra PATTERSON
v.
Charles Myers PATTERSON, Jr.
Civ. 2342.
Court of Civil Appeals of Alabama.
November 19, 1980.
Rehearing Denied December 24, 1980.
DeWayne N. Morris and Curtis O. Liles, III of Markstein & Morris, Birmingham, for appellant.
Douglas Corretti and Samuel Maples of Corretti, Newsom & Rogers, Birmingham, for appellee.
BRADLEY, Judge.
This is a child custody case. The wife appeals from the modification of a divorce decree awarding custody to the father. We reverse.
Saundra and Charles Patterson were divorced on April 25, 1979. The custody of their two young children was awarded to Saundra, the mother.
On January 30, 1980 the father, Charles, filed a petition in the Circuit Court of Jefferson County asking that the divorce decree be modified by awarding him custody of the children. The petitioner averred that circumstances had changed since the divorce decree in that the mother was openly living with a man to whom she was not married and, therefore, she was not a fit person to have custody of the children. Saundra denied this charge, and the trial court, after an ore tenus hearing, entered an order finding "that since the date of the divorce of these parties, the Plaintiff has conducted herself in such a manner in the presence of the minor children of the parties, that a consideration for the welfare of the said minor children require that there be a change of custody." The custody of the children was then awarded to the father.
The evidence shows that at all times since her divorce, Saundra has lived with her two children in a three bedroom house in Birmingham where they lived prior to Saundra's and Charles's divorce. On at least three occasions during October and November 1979 Mr. Gewin Johnson spent the night at Saundra's house. On these occasions Saundra admits having sexual intercourse with Johnson. Saundra admits that these were not the only occasions Johnson spent the night at her home. Saundra's children were home on the three nights Johnson spent the night during October and November but they were not always home when he stayed there. When Johnson spent the *847 night with Saundra the children never entered the bedroom where the sexual relations occurred. The children were asleep in their own bedroom some ten steps away.
Charles is employed at Handy TV Warehouse. He is twenty-nine years old and his present wife is thirty-five years old. Charles made $13,000 in 1979. He is a salesman and his income varies depending on his commissions. Sandra Sue, Charles's current wife, is unemployed, pregnant, and receiving unemployment compensation. Charles and Sandra Sue had engaged in regular sexual relations with each other prior to their respective divorces. Furthermore, Charles and Sandra Sue spent the night together along with Sandra Sue's twelve year old daughter in a motel in Pell City, Alabama prior to their respective divorces. After Charles and Sandra Sue had divorced their former spouses, but prior to their marriage to each other, they resided in an apartment together. Also Sandra Sue voluntarily gave up custody and control of her minor children as part of her divorce from Thomas Ray McClellan. Sandra Sue's children by her prior marriage are now residing with her and Charles, but she does not receive any child support. Her children are a boy age seventeen and a girl age twelve. They now live in a two bedroom apartment but plan to move into a larger house.
Saundra is twenty-seven years old and is employed at Photocopy, Incorporated. The divorce decree awarded Saundra child support payments of $65.00 per week plus twenty-five percent of Charles's net take-home commissions.
The issue before this court is whether there has been such a material change in circumstances as to authorize the trial court to take custody of the children from the mother and award it to the father.
At the outset, we take notice of the following time-honored principles:
First, it is well established that where testimony is taken ore tenus, the finding by the trial court has the weight of a jury verdict and such finding will not be disturbed unless plainly and palpably wrong and contrary to the great weight of the evidence.
Second, divorce decree providing for custody of a minor child will not be modified unless changed conditions are shown which justify such modification.
Third, in proceeding to modify a divorce decree respecting custody, each case must rest on its own facts and circumstances with the principle always in mind that the welfare of the child is of paramount importance.
Fourth, where the children are of tender years, the mother is generally considered better fitted to exercise custody unless she is unfit for the trust.
And, finally, it is held in this state that a party seeking modification of a child custody provision of a divorce decree must allege and show some change of conditions or other substantial reason for modification. [Citations omitted.]
Gould v. Gould, 55 Ala.App. 379, 316 So.2d 210 (1975).
The mother argues that the evidence totally fails to show that she is an unfit mother and should be deprived of her children. The father replies that the mother has conducted herself in such a manner that she is not fit to have the custody of the children because she has been illicitly cohabiting with a man to whom she is not married in the house where she and the children reside. The mother says that her boyfriend has spent the night at the house and they have had sexual relations but never in the presence of the children. But she also says that her former husband, while married to her, had sexual intercourse over a period of several months with the woman to whom he is presently married; and that on one occasion when he was staying with this woman, who was also married to someone else at the time, they were forced to leave the apartment and go to a motel because relatives of the woman discovered them in her apartment. At the motel the husband and his married woman friend slept in one bed and the woman's twelve year old daughter slept in the other bed in the same room.
*848 The evidence shows that Saundra, on several occasions, had sexual intercourse with a man not her husband while her two children were in the same house. Nowhere in the record does there appear any evidence that the children witnessed or were even aware of such conduct. The children are ages six years and four years. They were asleep in their own bedrooms when their mother and Johnson were in another room. At no time were the children in the presence of this conduct. In Roberson v. Roberson, Ala.Civ.App., 370 So.2d 1008 (1979) the mother allegedly engaged in an act of oral sex with an employee of the husband in her bedroom while her two children were crying and beating on the locked bedroom door. We said then:
[A]lthough it [sexual act] was alleged to have been committed while the children were in the Roberson home, it was not in their presence. The remaining testimony which relates to the mother's unfitness, particularly that of Mr. Dunlap, at best tends to indicate indiscretion on her part. But here again, there is no proof that it occurred in the children's presence or that it had a direct bearing on their welfare.
While this court in no way condones such conduct on the mother's part, we do not consider these acts of indiscretion alone to be sufficient to warrant a custody change. Gould v. Gould, supra.
We also said in Roberson, supra that:
With respect to the modifications premised on the moral unfitness of the mother with whom custody of the children was originally vested, it has long been held that while indiscreet conduct is a factor to consider, a mother will not be denied custody for every act of indiscretion or immorality. Gould, supra. This rule obtains especially where the party seeking modification fails to establish a substantial detrimental effect by the immoral conduct on the welfare of the child.
See also Etheridge v. Etheridge, Ala.Civ.App., 375 So.2d 474 (1979).
Again, we point out that the trial court based its decision to deprive the mother of the children's custody solely on her conduct with her boyfriend. Also, the thrust of the evidence was directed solely toward the immoral relationship of the mother and her boyfriend.
We are of the opinion that the father has failed to carry the burden placed upon him to show a substantial change in circumstances since the divorce such as would warrant a change in custody of the children. At most, the father proved only that the mother had acted indiscreetly. There was no proof that such conduct occurred in the presence of the children and no proof was offered that such conduct had adversely affected the children. Furthermore, the conduct of the father with his present wife during the time he was married to the appellant would militate against a finding that he was a more fit person to have custody of the children than the appellant.
Based on this state of the evidence we conclude that the trial court erred in changing the custody of the children from the mother to the father, and we reverse its judgment. The case is remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P. J., concurs.
HOLMES, J., dissents.
HOLMES, Judge (dissenting):
I respectfully dissent.
It is axiomatic that where a trial court modifies a child custody decree after hearing evidence ore tenus, its findings will not be reversed on appeal unless those findings are plainly and palpably wrong. I do not believe that in this instance the trial court is plainly and palpably wrong.
As I view the testimony, there is evidence that would support the conclusion that a male acquaintance of the mother in fact resided in the home of the mother. At least, the evidence supports a conclusion that the male friend was in the home on a frequent basis. There is further evidence that the mother and the male friend regularly engaged in sexual intercourse. There *849 is further evidence that these encounters occurred when the children were in the home and the children were aware that the mother and the male friend were sleeping in the same room. It is also clear that the mother and the male friend were not married at the time of trial nor was the mother married to anyone. There is also some evidence, although slight, that the mother did not properly care for the children.
In view of the above, I would affirm the trial court. See, Smith v. Smith, Ala.Civ.App., 334 So.2d 915 (1976).
I would further note that I have no difficulty in distinguishing the facts of this case from Gould v. Gould, supra; and Roberson v. Roberson, supra. In Gould the evidence of the mother's alleged indiscreet conduct was, at best, inconclusive. Furthermore, at the time of the hearing on the petition to modify, the mother had married her alleged paramour and had created a healthy family environment for the children. In Roberson, the alleged acts of indiscretion on the mother's part were isolated incidences; no man was ever alleged to have spent the night with her or moved in with her. Additionally, the mother in Roberson had also remarried at the time a change in custody was requested. Finally, the evidence clearly showed that the mother and her new spouse provided a stable home environment for her children.
I would affirm the trial court's decree for to do otherwise would be to substitute our decision for that of the trial court. This the law does not permit. See, Sutton v. Sutton, Ala.Civ.App., 359 So.2d 392 (1978).