537 So.2d 946 (1988)
Thomas George JONES
v.
Regina K. Jones HARAWAY.
Civ. 6472.
Court of Civil Appeals of Alabama.
November 30, 1988.
*947 Jerry Lee Hicks, Huntsville, for appellant.
William K. Bell of Lammons, Bell & Sneed, Huntsville, for appellee.
PER CURIAM.
This is a child visitation case.
The parties were divorced in 1979. Custody of their daughter, Aimee Beth Jones, was granted to the mother, and visitation rights were granted to the father.
In August 1987 the mother filed a petition to modify, requesting a modification of the father's visitation rights and an attorney fee award. The mother sought specifically to restrict the child's overnight visits with the father because he was living with his girlfriend out-of-wedlock. The trial court granted the mother's petition, and the father appeals. We reverse and remand.
The dispositive issue on appeal is whether there was sufficient evidence to establish that it was in the child's "best interests" to terminate overnight visitation privileges with her father. Put another way, was there any evidence that showed that the father's living arrangement had a substantial detrimental effect on the child.
Our courts have long held that, while evidence of indiscreet behavior or conduct is a factor to consider in a custody action, custody will not be modified where the party seeking modification fails to establish a substantial detrimental effect on the welfare of the child as a result of the indiscreet conduct. Benton v. Benton, 520 So.2d 534 (Ala.Civ.App.1988); Armstrong v. Armstrong, 515 So.2d 27 (Ala.Civ.App. 1987); Smith v. Smith, 464 So.2d 97 (Ala.Civ.App.1984); Roberson v. Roberson, 370 So.2d 1008 (Ala.Civ.App.1979). In cases of primary custody, indiscreet behavior, such as living with someone of the opposite sex without the benefit of marriage, is only a factor to be considered, and our case law requires that there be evidence presented showing that such misconduct is detrimental to the child. Smith, 464 So.2d 97. Such misconduct is not evidence in itself of a substantial detrimental effect on a child despite the absence of any proof of harm to the child.
While this court is aware that the cases cited above concern primary custody situations and not visitation privileges, we know of no reason why the same standard should not equally apply to custody cases dealing with visitation rights.
Clearly, if such indiscreet behavior is only to be considered a factor in primary custody cases, surely it should not be considered anything more in a visitation rights case. Furthermore, in visitation cases there should still be evidence presented to show that the misconduct complained of is detrimental to the child.
This conclusion is further supported by the fact that the majority of appellate courts in this country require a showing that a parent's indiscreet conduct, i.e., "cohabitation," has adversely affected the child in primary custody changes as well as in visitation situations. Gallo v. Gallo, 184 Conn. 36, 440 A.2d 782 (1981); Chenevert v. Chenevert, 497 So.2d 47 (La.Ct.App. 1986); J.L.P. (H) v. D.J.P., 643 S.W.2d 865 (Mo.Ct.App.1982); Kelly v. Kelly, 217 N.J. Super. 147, 524 A.2d 1330 (Ch.Div.1986); Venable v. Venable, 2 Va.App. 178, 342 S.E.2d 646 (1986); Brinkley v. Brinkley, 1 Va.App. 222, 336 S.E.2d 901 (1985).
Here, we have carefully reviewed the record and find that there is no evidence whatsoever that it would be in the best interests of the child to terminate the overnight visits with her father. In other words, there is simply no evidence that the child has suffered any substantial detrimental effect due to the father's living arrangements. The only evidence presented by the mother was that the father did live with his girlfriend and that the child involved was nine years old. This alone does not appear to constitute a substantial detrimental effect. Stated differently, there is no evidence of a detrimental effect, *948 although such evidence might be shown to exist on remand.
The father also contends that the trial court erred in the attorney fee award to the mother. We disagree.
It is well settled that the award of attorney fees in divorce or modification cases is within the sound discretion of the trial court and such awards will not be reversed absent an abuse of discretion. Cole v. Cole, 507 So.2d 1333 (Ala.Civ.App.1987). After a review of the record, we find no such abuse in the award of attorney fees to the mother.
In light of this opinion, the mother's request for attorney fees on appeal is denied at this time.
In view of the above, we affirm that part of the trial court's order concerning the award of attorney fees to the mother and reverse that part of the order concerning visitation and remand for proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BRADLEY, P.J., and HOLMES, J., concur.
INGRAM, J., concurs in part and dissents in part.
INGRAM, Judge (dissenting in part):
I respectfully dissent from the majority holding in this case regarding restrictions imposed by the trial court on the father's visitation rights.
The instant case presents to this court a question of first impression on the issue of whether the visitation privileges of a parent who is cohabiting with a member of the opposite sex without benefit of marriage may be restricted to exclude the child's overnight visits in that parent's home.
Although no Alabama appellate court has addressed the precise issue now before us, other states have done so. I have reviewed many of those decisions as an aid to resolving the issue presented here. Cases with factual scenarios that differ from the one now before this court are included in an effort to assess the approaches of other jurisdictions relative to the extent of a child's contact with a parent who is engaged in an illicit affair with a live-in companion. To broaden my discussion, I will mention cases that involve custody as well as visitation disputes and homosexual as well as heterosexual parents. I must emphasize, however, that the issue in this case is visitation and that the relationship involved is clearly between members of the opposite sex.
The number of unmarried adults in our country who are living with companions with whom they have a sexual relationship is significant. See Wadlington, "Sexual Relations After Separation or Divorce: The New Morality and the Old and New Divorce Laws," 63 Va.L.Rev. 249 (1977). Many of them are parents of children from dissolved marriages, and therefore, trial courts across the country have been confronted in recent years with the problem of developing custody and visitation orders affecting these children. My review of cases from other jurisdictions indicates that visitation restrictions are not uncommon. The most often used is the prohibition of overnight visits; also common is a prohibition against the presence of the parent's lover during visits. See generally Annot., 40 A.L.R. 812 (4th ed. 1983).
Some jurisdictions have upheld visitation restrictions and custody changes based solely on a parent's cohabitation with a person to whom he or she is not married.
The New Jersey appellate division affirmed an order forbidding the presence of the father's girlfriend overnight when his children were visiting, holding that the moral values of the custodial parent can be considered in imposing visitation restraints. DeVita v. DeVita, 145 N.J.Super. 120, 366 A.2d 1350 (App.Div.1976). The court stated:
"We do not decide whether the mother's views are correct or incorrect but she has a rightful interest in the moral welfare of the children which is entitled to respect. Further it must be acknowledged that her views are not contrary to those of a substantial body of the community."
145 N.J.Super. at 128, 366 A.2d at 1354.
The Virginia Supreme Court affirmed an order transferring custody from the mother *949 to the father on the sole ground that the mother was openly living with a man in an adulterous relationship in the same home with the children. Brown v. Brown, 218 Va. 196, 237 S.E.2d 89 (1977). It was not the mother's relationship per se that rendered her unfit to have custody, but the fact that she conducted the affair in the children's presence. There the court said:
"In all custody cases the controlling consideration is always the child's welfare and, in determining the best interest of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which minor children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding."
237 S.E.2d at 91.
A few years later, that court was presented with a case involving a custodial parent who engaged in an active homosexual relationship in the same residence as the child. Roe v. Roe, 228 Va. 722, 324 S.E.2d 691 (1985). The mother, who had relinquished custody while undergoing treatment for cancer, petitioned to regain custody of the child when she discovered that the father was living with another man. In reversing the trial court's joint custody order, the court stated:
"We conclude that the best interests of the child will only be served by protecting her from the burdens imposed by such behavior, insofar as practicable. In the circumstances of this case, this necessitates not only a change of custody to the mother, but also a cessation of any visitations in the father's home, or in the presence of his homosexual lover, while his present living arrangements continue."
324 S.E.2d at 694.
In Jarrett v. Jarrett, 78 Ill.2d 337, 36 Ill.Dec. 1, 400 N.E.2d 421 (1979), cert. denied, 449 U.S. 927, 101 S.Ct. 329, 66 L.Ed. 2d 155 reh'g denied, 449 U.S. 1067, 101 S.Ct. 797, 66 L.Ed.2d 612 (1980), the mother's boyfriend moved into her home, which was also occupied by her children; the couple did not intend to marry. The trial court granted the father's petition for custody, but the award was reversed by the intermediate appellate court (64 Ill.App.3d 932, 21 Ill.Dec. 718, 382 N.E.2d 12 (1978)). In reversing the appellate court, the Illinois Supreme Court opined as follows:
"Jacqueline's disregard for existing standards of conduct instructs her children, by example, that they, too, may ignore them ... and could well encourage the children to engage in similar activity in the future. That factor, of course, supports the trial court's conclusion that their daily presence in that environment was injurious to the moral well-being and development of the children.
"It is true that, as Jacqueline argues, the courts have not denied custody to every parent who has violated the community's moral standards, nor do we now intimate a different rule. Rather than mechanically denying custody in every such instance, the courts of this State appraise the moral example currently provided and the example which may be expected by the parent in the future."
36 Ill.Dec. 4, 400 N.E.2d at 424.
Shortly after the decision in Jarrett, an Illinois court held that Jarrett's rationale "contains elements which are present in the terms of visitation to be fixed by the trial court for varying terms and conditions and are proper considerations in the exercise of its discretion." In re Marriage of Lawver, 82 Ill.App.3d 198, 37 Ill.Dec. 540, 544, 402 N.E.2d 430, 434 (1980). The conclusive presumption established in Jarrett of harm to the child, based on the parent's cohabitation without marriage, was not, however, extended to visitation. "To restrict visitation rights the court must find that the child's physical, mental, moral or emotional health is endangered." In re Marriage of Hanson, 112 Ill.App.3d 564, 68 Ill.Dec. 268, 271, 445 N.E.2d 912, 915 (1983).
*950 The majority of the decisions reviewed upheld visitation restrictions and custody changes upon a showing that the parent's illicit cohabitation with a person not his or her spouse did adversely affect the child. The nature of the living arrangement and the extent of the child's knowledge of the parent's immoral or indiscreet conduct are major factors in the evaluation of the impact of such a relationship on a child. Upon a showing of detrimental effect, a "best interests of the child" approach is generally followed in structuring orders designed to insulate the child from the parent's extramarital sexual relationships. Somers v. Somers, 326 Pa.Super. 556, 474 A.2d 630 (1984) (father's relationship with live-in girlfriend contrary to children's religious and moral training; girlfriend not to be present during their overnight visits); Gray v. Gray, 654 S.W.2d 309 (Mo.App. 1983) (father lived with married woman; best interests of the child consistent with restriction against overnight visitation in father's home as long as he and companion were not married); Lasseigne v. Lasseigne, 434 So.2d 1240 (La.Ct.App.1983) (father lived with girlfriend in small trailer, children aware of illicit nature of relationship; order prohibiting their overnight visitation there consistent with their best interests); Gallo v. Gallo, 184 Conn. 36, 440 A.2d 782 (1981) (evidence of father's neglect of child's religious education and small residence considered along with his lifestyle; overnight visitation prohibited as long as father lived with female companion); Palmer v. Palmer, 138 Vt. 412, 416 A.2d 143 (1980) (father had open relationship with girlfriend; limitations placed on overnight visitation were in children's best interests).
Because the rules governing child custody must guide the courts in structuring proper visitation, I find it helpful to briefly review basic Alabama custody law.
The moral values of a parent and the resulting effect on a child are plainly factors that a trial judge may consider in making an initial custody award. Section 30-3-1, Ala.Code 1975 (1983 Repl.Vol.), states:
"Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper, having regard to the moral character and prudence of the parents and the age and sex of the children; and pending the action, may make such orders in respect to the custody of the children as their safety and well-being may require...." (Emphasis added.)
The Supreme Court of Alabama detailed the appropriate factors to be evaluated in custody determinations in Ex parte Devine, 398 So.2d 686 (Ala.1981). Pertinent to discussion here are the following:
"the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children...."
398 So.2d at 696-97. The trial court's obligation, after considering the facts presented in each case, is to award custody according to the best interests of the child. Cokely v. Cokely, 469 So.2d 635 (Ala.Civ.App. 1985).
Once a custody award is made, a parent seeking a change of custody bears a heavy burden. That parent must not only prove that he or she is a fit custodian, but also that the change will materially promote the child's best interests and welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984). McLendon mandates that, in a modification of child custody, the proposed benefit to the child must more than offset the disruptive effect caused by uprooting him or her.
Clearly, then, two different standards are applied when custody determinations are made. If custody has not previously been awarded, the "best interests of the child" standard is used. In reviewing cases in which a judgment granting custody has already been made, custody will not be changed unless the change would "materially *951 promote" the child's welfare. Ex parte Couch, 521 So.2d 987 (Ala.1988).
Although evidence of a parent's indiscreet conduct is a factor to be considered in deciding custody, a parent will not be denied custody for every act of indiscretion or immorality. Braswell v. Braswell, 460 So.2d 1339 (Ala.Civ.App.1984); Roberson v. Roberson, 370 So.2d 1008 (Ala.Civ.App. 1979). Evidence of a parent's past immoral conduct is not sufficient by itself to meet the burden of proof required by McLendon. Benton v. Benton, 520 So.2d 534 (Ala.Civ.App.1988); Braswell, supra. Our courts have long held that the party seeking custody on the basis of alleged immoral conduct by the custodial parent must establish a substantial detrimental effect to the child's welfare as a result of such conduct. Armstrong v. Armstrong, 515 So.2d 27 (Ala.Civ.App.1987); Smith v. Smith, 464 So.2d 97 (Ala.Civ.App.1984); Gould v. Gould, 55 Ala.App. 379, 316 So.2d 210 (1975).
The focus of any inquiry into whether there has been a substantial detrimental effect on a child must be the current lifestyle of the parent as demonstrated to the child. Our courts do not condone indiscreet or immoral conduct of a parent, but without the child's knowledge, such conduct cannot be shown to be detrimental to the child. Likewise, while our courts do not condone past improper conduct of a parent which was known to the child, that parent who has mended his or her ways by disengagement from such conduct cancels the detrimental effect it has on the child. Repeated immoral conduct by a parent, however, in the home of the child or with the child's knowledge may be reason to remove custody from that parent. McKim v. McKim, 440 So.2d 562 (Ala.Civ.App.1983).
It is both logical and legally sound that our courts apply the same factors considered in making primary custody awards to decisions regarding visitation privileges for the noncustodial parent. Visitation times are, after all, periods of "temporary custody" by that parent. As in initial custody determinations, the standard applied to the establishment of visitation awards is always the best interests and welfare of the child. Caldwell v. Fisk, 523 So.2d 464 (Ala.Civ.App.1988); Green v. Green, 474 So.2d 1135 (Ala.Civ.App.1985).
Protection of a child's moral development should properly be a concern of our courts as part of the judicial search for the best interests of the child. I believe that courts can and should be involved in preventing the undermining of a child's respect for marriage and the family. Like the majority, I feel that a parent's immoral or indiscreet conduct is a factor to be evaluated by trial judges in the determination of both custody and visitation. I would hold, however, that a court should assign considerable negative impact to the conduct of a parent who engages in continuous or repeated immoral or indiscreet sexual relationships, such as the cohabitation out of wedlock with a member of the opposite sex presented in the instant case.
The father asks this court to find error in that portion of the trial court's order which states:
"(B) Neither party shall allow an adult person of the opposite sex to whom he or she is not married or related by kinship to stay overnight in the home of said party at any time when the parties' minor child, Aimee Beth Jones, shall be in the care, custody, or control of said party, whether or not it shall be while the child is in the care, custody and control of the Plaintiff, or whether or not it shall be during the exercise of visitation rights awarded to the Defendant Thomas George Jones."
The father contends that a restriction of this nature may not be placed on his visitation rights without evidence of a "substantial detrimental effect" on his daughter's welfare. That contention is correct. He insists, however, that no adverse effect on the child was proven here.
The mother in Jarrett advanced the argument that the trial court was required to ascertain that her children had suffered actual tangible harm before modifying the prior custody decree. The Illinois Supreme Court responded:

*952 "Measures to safeguard the moral well-being of children, whose lives have already been disrupted by the divorce of their parents, cannot have been intended to be delayed until there are tangible manifestations of damage to their character.
"While our comments have focused upon the moral hazards, we are not convinced that open cohabitation does not also affect the mental and emotional health of the children.... It is difficult to predict what psychological effects or problems may later develop from their efforts to overcome the disparity between their concepts of propriety and their mother's conduct."
36 Ill.Dec. at 5-6, 400 N.E.2d at 425-26.
The Florida courts have addressed a factual situation similar to the one in the case before this court. Commander v. Commander, 493 So.2d 530 (Fla.Ct.App.), cert. denied, 501 So.2d 1281, (Fla.1986). Affirming the trial court's denial of a mother's request for overnight visitation with her three children at the one-bedroom apartment she shared with her boyfriend, the appellate court held as follows:
"[T]he courts have not reached the level of impotency in protecting and preserving the institutions of marriage and the family that they are powerless to prevent impressionable young children from being thrust into the middle of a cohabitation living arrangement, such as in the case at bar, which would tend to foster the development of a distorted view by such children of acceptable norms of family life in our society....
"We have also considered the notion that the subject order may be vulnerable because there has been no evidence that the visitation demanded by the appellant has adversely affected the children.... [W]e do not believe a court must wait until there is a demonstrable adverse effect upon a child.... Rather, we believe that a reasonably anticipated adverse effect on the child from exposure to a proposed situation or circumstance may be sufficient to support an order prohibiting such situation or circumstance."
493 So.2d at 532-33.
I agree with the views expressed in Jarrett and Commander. Alabama caselaw requires proof of a substantial detrimental effect upon a child by a parent's conduct in these situations, but I do not find that precedent requires that "substantial detrimental effect" be equated with "tangible harm," nor do I think it should be. If a court must wait until the harm to an impressionable child caused by parental misconduct becomes demonstrable, then it is too late for the court to fulfill its obligation to act in the best interests of the child.
A trial court has wide discretion in determining the visitation privileges accorded a noncustodial parent, and this court should not reverse unless the trial court has abused its discretion. Jackson v. Jackson, 520 So.2d 530 (Ala.Civ.App.1988); Laurent v. Laurent, 434 So.2d 266 (Ala.Civ.App. 1983). I would not hold the trial court in error for its order of restriction on this child's visitation with her father, as I think the trial court did not abuse its discretion in this case. I believe that this court should reject the father's argument that no evidence was presented of a substantial detrimental effect on his daughter. The record reflects that the father lives openly with a woman to whom he is not married. His daughter is nine years old, a child of impressionable age. She knows that her father lives with his girlfriend, and she was regularly exposed to his lifestyle before the court's modification order. My review of the record satisfies me that evidence sufficient to establish a substantial detrimental effect on this child was presented to the trial court. I would affirm the trial court's determination that a restriction of the father's visitation privileges would be in the child's best interests. To do otherwise is to substitute our judgment for that of the trial court.