Rhonda K. Romine Bratton (hereinafter "the mother") appeals the trial court's decision to grant the petition to modify custody presented by Michael A. Romine (hereinafter "the father"). The mother and father divorced in January 1995. One child, who was 12 years old at the time of the custody-modification hearing, was born of the marriage. The divorce decree awarded custody to the mother and liberal visitation rights to the father. In February 1999 the father filed a petition to modify custody; the mother answered the petition in March 1999. In June 1999 the father filed a motion for specific visitation. The following month the trial judge entered a consent order setting out specific visitation periods for the father. On August 10, 1999, the father filed an amendment to his petition, asking the trial court to find the mother in contempt-of-court for violating the consent order. The mother filed a counter-petition and a motion for rule nisi on August 18, 1999. The matter was tried on August 23, 2000, and the trial court issued its order on August 31, 2000.
The trial court modified the original divorce judgment to give primary physical custody to the father, setting out specific visitation periods for the mother and the trial court ordered the transfer of a horse and riding equipment that had originally been awarded to the mother to the father. The trial court declined to find the husband in contempt of court, but held the mother in contempt of court and suspended the sentence pending the mother's compliance with this order and any future orders of the trial court. The mother's motion for a new trial was argued before the trial court and denied on September 22, 2000. This appeal follows.
On appeal the mother argues that the trial court erred in transferring custody of the child, in awarding property to the father, and in failing to find the father in contempt for not maintaining insurance policies as required in the divorce judgment.
The main issue on appeal is whether the trial court abused its discretion by changing custody from the mother, who had been the custodial parent since the divorce, and awarding custody to the father. The well-established standard for trial courts to use when hearing a motion to modify custody is articulated in Ex parte McLendon,455 So.2d 863 (Ala. 1984). McLendon states that the parent seeking *Page 61 
to change custody has the burden of showing that the inherently disruptive effect of uprooting the child is more than outweighed by the good brought about by the change in custody. See McLendon, 455 So.2d 863, 866. The parent seeking custody must show not only that he or she is fit, but also that the change of custody would materially promote the child's best interest and welfare. See McLendon, supra.
Our review of the record reveals that the trial court heard a full day of testimony regarding the custody-modification petition. The trial court heard testimony from the father, the mother, and a family friend. Numerous exhibits, offered by both the father and the mother were admitted. The evidence is clear that immediately after the divorce in 1995 the mother entered into a second marriage. This marriage lasted until 1997, during which time numerous incidents of domestic violence occurred. The record reveals that the mother often allowed the father to keep the child for longer periods than ordered under the divorce judgment simply to protect the child from potential violence. However, none of these facts are really relevant to the father's motion to modify custody, which was filed in February 1999.
By the time the father filed his motion to modify, the mother had divorced her second husband and was single again. The evidence clearly shows that the mother had a live-in boyfriend for nearly a year before the filing of the father's petition for custody. The mother testified that any sexual activities between her and her boyfriend had occurred behind closed doors, out of the sight or the hearing of the child. Around the time the father filed his petition to modify, the mother married her boyfriend. Under the McLendon standard, indiscreet behavior alone is not sufficient to justify a change in custody. See Benton v. Benton,520 So.2d 534 (Ala.Civ.App. 1988); Patterson v. Patterson, 399 So.2d 846
(Ala.Civ.App. 1980).
The evidence in the record indicates the following. Between May 1996 and August 1999 the mother's electricity had been disconnected five times, she had written three worthless checks, and she had failed to make any payment on her power bill during 19 of those 27 months. Between August 1999 and April 2000 there had been four delinquent notices from the power company and the mother had gone two months without making any payment on her power bill. There was also evidence that between June 1998 and early 2000 the mother's telephone service had been disconnected 15 times.
Conflicting testimony regarding the lack of food and basic household supplies was cumulative to the mother's testimony that she had had some financial problems in the past, but that she was operating on a budget at the time of the hearing. She stated that she loved the child and that she always protected her from any disruption caused by financial difficulties. The trial court received conflicting testimony regarding the child's academic problems and her lack of participation in extracurricular activities at school. The record indicates that the child has learning disabilities but that she receives tutoring and is enrolled in special-education classes to assist her learning. Testimony confirmed that the child's involvement in equestrian riding competitions and the discipline involved in caring for her own horse were a valuable part of her life.
The record contains extensive testimony, much of which was disputed, concerning the respective lifestyles of the mother and the father. Neither parent has a spotless record on which to claim custody, but this court is not allowed to reweigh the evidence on appeal. See *Page 62 Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996). In the absence of specific findings of fact, an appellate court will assume that the trial court made those findings necessary to support its judgment. Ex partePatronas, 693 So.2d 473, 475 (Ala. 1997).
A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal. Ex parte R.T.S.,771 So.2d 475 (Ala. 2000); Payne v. Payne, 550 So.2d 440 (Ala.Civ.App. 1989). A trial court's judgment based on ore tenus evidence will not be reversed unless it is plainly and palpably wrong or unless an abuse of discretion is shown. Morrison v. Morrison, 587 So.2d 423 (Ala.Civ.App. 1991); Patronas, supra. To substitute our judgment for that of the trial court would be to reweigh the evidence. Suffice it to say that the trial court was presented with sufficient evidence to support its determination that the good brought about by a change in custody would more than offset the inherently disruptive effect caused by uprooting the child. In that regard, we affirm the trial court's order insofar as it granted the father's petition, and awarded him custody of the child.
The mother asserts that the trial court erred in awarding the husband a horse and riding equipment that had been awarded to the mother in the original divorce decree. The law in Alabama is well settled that a court cannot modify property provisions in a divorce judgment, except to correct clerical errors, after 30 days from the final judgment. See Exparte Littlepage, 796 So.2d 298 (Ala. 2001); Johnson v. Johnson,585 So.2d 89 (Ala.Civ.App. 1991). While we sympathize with the trial court's wish to lessen the disruption inherent in modifying custody by awarding the horse to the father so that it would be with the child, there is no law to support this decision. We must reverse the portion of the trial court's order awarding the horse and riding equipment to the father and render a judgment in favor of the mother as to this issue.
The mother's final issue on appeal is that the trial court erred in failing to find the father in contempt for allowing life insurance policies he was ordered by the divorce judgment to maintain on his life, the mother's life, and the child's life to lapse. The father testified that he had the mother's permission to drop the court-ordered policies on his life, the life of the mother (with benefits payable to the child), and on the life of the child. The father stated that he had taken out a larger policy on the child and that he was the beneficiary of this policy.
It is true that this Court has upheld the judgments of trial courts holding fathers in contempt-of-court for failure to maintain insurance policies as ordered in the divorce judgment. See McKenzie v. McKenzie,568 So.2d 819 (Ala.Civ.App. 1990); Epperson v. Epperson, 437 So.2d 571
(Ala.Civ.App. 1983). In the case before us now, however, the trial court did not find the father to be in contempt.
 "`[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly or palpably wrong, [the appellate] court will affirm.'"
Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala. 1999), quotingStack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994). It is completely within the trial court's discretion either to find or not to find a party in contempt. In these cases appellate review of the record is solely to determine if there is support for the trial court's order. Seay v. Seay,678 So.2d 1189 (Ala.Civ.App. 1996). *Page 63 
We must defer to the discretion of the trial court in its decision to not find the husband in contempt.
Based on the foregoing, we affirm the trial court's decision insofar as it modified custody and did not find the father in contempt-of-court and reverse it insofar as it awarded property to the father, and as to the property issue, we render a judgment for the mother. Both the mother's request and the father's request for an attorney fee are denied.
AFFIRMED IN PART; REVERSED AND JUDGMENT RENDERED IN PART.
Yates, P.J., and Crawley, Thompson, and Murdock, JJ., concur.