This is a child custody case.
The parties to this proceeding were divorced on March 4, 1976 and the wife was awarded custody of the three minor children resulting from the marriage. Approximately eight months after the divorce decree was rendered, the father filed a petition in the Circuit Court of Montgomery County seeking a modification of the custody arrangements prescribed in the trial court's original decree. The father's petition asked that the custody of the three minor children be awarded to him. The basis of his complaint was that the mother was no longer a fit person to have custody of the children. The respondent-wife filed an answer denying this contention and a counterclaim asking for increased child support and attorney's fees.
After a hearing on the matter, the trial court denied the relief requested by petitioner and also denied the respondent's demand for an increase in child support. The court did, however, find that respondent was unable to pay her attorney for his services and thereby ordered the petitioner to pay respondent's lawyer $750 as a reasonable attorney's fee.
The evidence submitted to the trial court in support of the petition for modification revealed that the parties, prior to the divorce in 1976, had lived in Northport (Tuscaloosa County), Alabama. At this time respondent became acquainted with a teenaged girl named Sheila Watson. Sheila was thirteen years old when she first met respondent and over the course of a number of years she frequently acted as a babysitter for respondent's children. In April 1976, shortly after the Stewarts' divorce, Sheila came to Montgomery to care for the children of the couple while respondent worked in a lawyer's office.
Evidence at the custody modification proceeding indicated that Sheila had an abortion when she was sixteen years old. Respondent stated that the aborted pregnancy *Page 818 
occurred about the same time that Sheila's parents were divorced and that Sheila was very distraught as a result of this event in her life. Sheila is now approximately twenty years of age and is employed by the same lawyer for whom respondent works.
The hearing on this matter also revealed that in 1973 and 1974, while the parties lived in Northport, respondent had a sexual relationship with a young man several years her junior. Petitioner did not know of this relationship at that time; however, he subsequently learned of his wife's adulterous acts. Nevertheless, respondent testified that her illicit relationship with the young man ended in 1974 and has not been renewed.
The respondent also testified that she met a man by the name of Royce Daughtry, who is employed as an aircraft mechanic at Fort Rucker, Alabama, about three months after the divorce and began dating him on a regular basis in July or August 1976. This man stayed overnight in her house on several weekends in September of 1976. Respondent stated that when the children were present in the house, she and her male friend slept in separate rooms. Moreover, she further testified that no sexual activity occurred while the children were in the house. This testimony was uncontradicted. The male friend has not spent the night in respondent's house since October 1976.
Respondent's testimony reveals that her children attend school regularly and make good grades. Additional evidence indicates that for a period of thirteen days in September 1976, the children had no one with them at their house from the time school ended at 3:45 p.m. until respondent came home from work at 5:50 p.m., because Sheila had taken a job in a lawyer's office and respondent had difficulty obtaining a babysitter to replace her. The children were, however, required to call respondent as soon as they got home and to stay there until she arrived.
Two of the children have had medical problems and one will need orthodontic work in the near future.
There was testimony from several witnesses to the effect that both parents loved and cared for the children and that both were fit to have custody of the children.
At the request of petitioner's attorney, the court had an investigation made of respondent's house by the Department of Pensions and Security. The report made by the investigator from Pensions and Security was turned over to the court for its examination. Respondent did not object to the report or its use by the court. Nevertheless, the investigator was placed on the stand by petitioner's attorney and questioned about the contents of the report.
The investigator's testimony and written report was to the effect that the respondent was a good mother, loved her children and took care of their needs. In addition it indicated that the children loved their mother, were well adjusted and did well in school. It was the investigator's opinion that the custody of the children should not be changed.
At the close of the hearing on the petition for modification, the trial court's decree concluded that both parents were fit to have custody of the children but that there was no change in circumstances sufficient to justify taking the children from their mother and placing them in the custody of their father.
Petitioner contends that the trial court committed several errors, any of which is sufficient to warrant reversal.
Petitioner's major contention, and the first one presented to this court for review, is that the trial court erred in finding that the respondent was a fit person to have custody of her three minor children. This contention is based on petitioner's view of certain portions of the evidence.
The evidence that petitioner relies on relates to the sexual relationship which respondent had with a young man prior to her divorce. The evidence shows the petitioner was unaware of this relationship at the time of the divorce. Petitioner now submits that this evidence, along with the evidence that respondent permitted her boyfriend *Page 819 
to spend the night in her house on the weekends, demonstrates that respondent is morally unfit to have custody of her children.
Despite the aforementioned evidence of respondent's misconduct and indiscretion, there is also evidence in the record that respondent terminated the relationship with the young man about one and one-half years prior to the divorce and it was not resumed. Furthermore, respondent stated that at no time while the children were in her house did she and her boyfriend sleep in the same room and that at no time had her children seen her in bed with her boyfriend. This testimony is undisputed. Moreover, respondent has corrected this situation and the boyfriend no longer spends the night at her house when he visits her.
Nor is the fact that for a thirteen day period the children were without a babysitter for one and a half hours each day after school sufficient to demonstrate that respondent is unfit as a mother. Many single parents find themselves in a similar situation and for a trial court to decree that such persons are unfit to care for their children solely because they cannot be present when their children come home from school would penalize single parents for a situation over which they often have no control. In addition, the evidence shows respondent made a diligent effort to find someone to stay with the children and subsequently hired a babysitter to be with them after school. Before obtaining this babysitter, she did the best she could under the circumstances. That is, she had the children call her as soon as they got home and she also instructed them to contact a neighbor if anything occurred which required an adult's attention.
Furthermore, the Pensions and Security investigator found that the children were happy living with their mother and that they appeared to be well adjusted and well cared for. On the basis of her investigation she recommended that the court's original decree awarding custody to the respondent not be changed.
We have said that unless unusual circumstances exist, immoral conduct by itself is insufficient to justify a change in child custody. See Jenkins v. Jenkins, 45 Ala. App. 500, 232 So.2d 680
(1970). Instead, it is a significant factor to be considered by the trial court in deciding whether circumstances have changed in such a manner that a change in custody is warranted. Jenkinsv. Jenkins, supra. Nonetheless, the trial court may consider other evidence and factors in deciding if an original decree awarding custody of children to a party should be modified and those children placed in the custody of another person. Stuckeyv. Stuckey, 50 Ala. App. 682, 282 So.2d 283 (1973). In the present case it is apparent that the trial court did not find such other factors to be present.
Moreover, the burden is on the moving party to convince the trial court that the circumstances and facts on which the original decree was based no longer exist or now differ to such a degree that a change in custody is required. Gould v. Gould,55 Ala. App. 379, 316 So.2d 210 (1975). Likewise, the party seeking modification must also demonstrate that such a change is in the welfare and best interest of the children. Gould v.Gould, supra.
After a careful reading of the evidence it is obvious that petitioner failed to convince the trial court that there were changed circumstances sufficient to justify taking the children from their mother and placing them in the custody of their father. Nor did petitioner prove to the court's satisfaction that the welfare and best interest of the children would be materially served by a change in custody.
It is well established that in cases where the trial court hears all the evidence ore tenus, the judgment of the trial court is presumed correct unless the evidence documented by the record before this court demonstrates that the trial court's judgment is plainly and palpably incorrect. Given this rule and the facts before us, we are not convinced that the trial court's decree refusing to grant a change in custody was *Page 820 
plainly and palpably in error. Strickland v. Osborn, Ala.Civ.App., 333 So.2d 582 (1976).
The second ground asserted by petitioner as a basis for this appeal relates to a conversation which occurred between the judge and the Pensions and Security investigator in the hallway next to the courtroom after the investigator had filed her report and had completed her testimony in the case.
Petitioner contends that matters relating to the present controversy were discussed by the judge and the investigator outside the presence of the parties and their attorneys and that as a consequence of not being present, petitioner was denied the right to examine or cross-examine the investigator concerning what she might have said to the judge during their conversation in the courthouse hallway.
Respondent replies that if there was error, it was harmless and did not prejudice the substantial rights of the petitioner. Moreover, the trial court permitted petitioner to cross-examine the investigator at a hearing on petitioner's motion to set aside the court's decree refusing to modify the original award of custody. Respondent argues that the transcript of this subsequent examination of the investigator demonstrates that nothing was discussed by the investigator and the judge that was not covered in the investigator's report.
After reading the investigator's testimony and report, we are not persuaded that the petitioner's rights have been prejudiced or that he suffered injury by the trial court's inappropriate discussion of a matter before the court with a third party outside of the presence of the parties and their attorneys.
However, the lack of prejudicial error does not mean that this court condones such actions by a trial judge. Nor are we willing to say that the action by the court in permitting an examination of a witness by the complaining party after a conversation has occurred between the judge and that witness outside the presence of the complaining party (or his attorney) automatically cures such conduct. However, in this instance the subsequent examination of the investigator by counsel for petitioner at the hearing on the petitioner's post-trial motion demonstrates that no substantial injury occurred to petitioner by the judge's conduct. While the judge's discussions with the investigator may have constituted nothing more than a friendly chat or an effort by the judge to compliment the investigator on her report, the conversation was nonetheless ill-timed and unseemly. Indeed, the Alabama Canons of Judicial Ethics which were adopted by our supreme court in 1975 state that a judge should avoid even the appearance of impropriety in all his activities. Canon 2, A.C.J.E., Code of Alabama 1975. In this regard a private interview or conversation between a judge and a witness or non-party (where interests which might be affected by such conduct are not represented) could be deemed an impropriety and worthy of criticism. See Canon 3 A (4), A.C.J.E., supra.
However, merely because a judge's conduct is inappropriate, such conduct is not necessarily a sufficient ground for reversal by this court, particularly in the absence of a showing by the complaining party that the action taken by the court was inconsistent with substantial justice or materially prejudiced the complaining party. Rule 45, ARAP. See Kilgore v.State, 263 Ala. 606, 83 So.2d 315 (1955); Isom v. State,51 Ala. App. 114, 283 So.2d 188, cert. den., 291 Ala. 523,283 So.2d 194 (1973). Since the petitioner made no such showing in the present case, the trial court's decree will not be reversed on the basis of the conversation which took place between the trial judge and the investigator from the Department of Pensions and Security.
The next objection raised by petitioner on appeal is that the trial court improperly refused to allow petitioner's attorney to ask one of respondent's witnesses a hypothetical question.
This objection arises from the following facts. The witness for respondent was asked on direct examination if she had an opinion about the respondent's fitness to *Page 821 
have custody of her children and the witness replied that she did indeed have an opinion on that subject. However, she never stated what that opinion was or what she thought about respondent's fitness (or lack thereof) to have custody of the children. Then on cross-examination the witness was asked the following question:
 "Okay. I'm going to pose a hypothetical question to you and I just simply want you to give me an answer regarding that. Would it have any bearing on your opinion of [the] fitness of a person to be a parent or to have custody of his or her children, if you subsequently learned that that person was having say male friends in the home while the children were in the home and were having male friends there to spend the night during the weekend and at other times during the week?"
There was an objection and the court sustained the objection by saying:
 "COURT: I think the hypothetical would tend to test the witness rather than the party whose character is brought into question. I believe I'll sustain that."
The hypothetical question asked by petitioner on cross-examination was based on the fact that respondent's witness had been questioned on direct examination concerning her opinion as to the fitness of the mother (respondent) to have custody of her children. Respondent's witness, however, never expressed her opinion on this subject; thus, the latter's opinion in respect to respondent's fitness as a mother was never placed in evidence. And it is quite generally stated in various decisions by the courts of this jurisdiction that a hypothetical question asked of a witness cannot be based upon facts which are not in evidence. Gamble, McElroy's AlabamaEvidence, § 130.01 (3d ed. Samford Univ. 1977). Consequently, if the trial court sustains an objection to a hypothetical question based on facts not in issue as it did in this case, such a ruling will be upheld on appeal.
Petitioner also claims that the trial court erred by stating that respondent's adulterous behavior prior to the divorce was irrelevant to the current proceedings.
This matter arose when respondent was asked on cross-examination if she had, prior to the divorce, a sexual relationship with a young man by the name of Johnny Gray. She stated that she had had such a relationship but that it ended in 1974 and had never been renewed. Respondent's counsel objected and moved to exclude the answer. The court overruled the motion and allowed the answer into evidence, but nevertheless stated:
 "COURT: I'm not sure it has any relevance at all. I tend to disregard it as something that occurred previous to the divorce. If he connects it up with a subsequent event I'm inclined to let it in for whatever it is worth."
It appears to this court that the trial judge was merely ruling that despite the fact that the testimony was admissible, he would give little weight to it since it concerned a matter which occurred prior to the divorce of the parties.
In a case relied upon by petitioner, Anonymous v. Anonymous,277 Ala. 634, 173 So.2d 797 (1965), the trial court took the position that evidence relating to conduct prior to the divorce could not be considered in a proceeding for modification of that decree. The supreme court, however, concluded that:
 ". . . facts which were known but not disclosed to the trial court in the original proceeding may be considered in a proceeding for modification, for neither the silence of the parties to the original proceeding nor any agreement entered into by them can prevent a court from looking after the interests of its ward."
Likewise, in the case at bar, the trial judge should have and did admit the testimony regarding sexual activity by respondent prior to the divorce; however, the weight that is to be given such testimony is the prerogative of the trial court. In the instant case the trial court indicated that the evidence would receive little weight and he was not in error for so indicating. A determination as to the weight to be given testimony *Page 822 
presented to a trial court while that court is sitting as a trier of fact is fully within the discretion of the court since one of the primary functions of a trier of fact is to weigh the evidence before it and reach its conclusions according to the weight given to each portion of evidence presented.
The final issue presented to this court for review concerns petitioner's contention that the trial court erred in awarding an attorney's fee to respondent. This contention is based on two grounds: (1) petitioner argues that respondent was not entitled to any attorney's fee because she did not present evidence at trial which proved the value of the legal services rendered in her behalf; and (2) he urges that even if the court did not err in awarding the respondent an attorney's fee, the amount of $750 which was awarded was excessive.
This court held in Godec v. Godec, Ala.Civ.App.,346 So.2d 459 (1977), that in a divorce action a wife was not required to prove the reasonable value of her attorney's services in order to permit the court to make an award of an attorney's fee. Accordingly, the absence of evidence bearing on the reasonableness of the award of an attorney's fee by the trial court in the present case did not preclude the court's right to make such an award.
Since the trial court had the authority to make an award in this instance, we must also consider whether the award is excessive.
In Phillips v. Phillips, 277 Ala. 2, 166 So.2d 726 (1964), the supreme court said:
 ". . . Attorneys for the wife in a divorce action are entitled to a reasonable fee for their services commensurate with their labor and skill involved, the results of the litigation and the earning capacity of the parties, and such allowance rests in the sound judicial discretion of the trial court. . . ."
After a careful examination of the record in the case before us, we are unable to say that the trial court abused its discretion in awarding respondent's attorney a fee of $750.
As we have indicated in this opinion, the trial court committed no reversible error. Thus the trial court's judgment is due to be affirmed.
Respondent has requested that this court award her a reasonable attorney's fee for the services performed by her counsel in defending this appeal. We consider $300 to be a reasonable fee in this matter and thereby award respondent an attorney's fee in this amount.
ATTORNEY'S FEE AWARDED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.