This appeal is a result of an order by the Circuit Court of Pike County modifying its original decree pertaining to the custody of the parties' three minor children.
Appellant (Billy Stewart) and appellee (Amyrillis "Amy" Stewart Grace) were divorced in May of 1975. The wife was awarded custody of the couple's three children: twin daughters named Ann and Nan, and their younger sister Betty Jo. Amy Grace and Billy Stewart subsequently agreed that the children would reside with their mother six months of the year, and would remain in their father's custody the other six months of the year. The original divorce decree was modified to reflect this agreement.
In August of 1977 Amy Grace filed a petition in the Circuit Court of Pike County alleging that her former husband refused to restore custody of the children to her. Thereafter, the trial court directed Billy Stewart to place the children in the custody of their mother. Upon learning of the trial court's order, Stewart filed a petition to modify the custody provisions of the original judgment divorcing the parties. In his petition he requested that the court terminate his ex-wife's right to custody and that it grant him complete and permanent custody of the children.
Following the procedural stages of the matter, a trial was held at which the court heard the evidence ore tenus. After having considered the evidence presented at trial, the court modified its original decree by awarding custody of the twins to the father, Billy Stewart, and custody of the youngest child to the mother, Amy Grace. From that judgment Billy Stewart filed this appeal.
On appeal Stewart urges that the trial court plainly and palpably abused its discretion by failing to award him custody of his youngest daughter. Amy Grace has submitted no brief in response to her former husband's assertions.
The record reveals that the wife had difficulty supporting the children during the time they were in her custody. At various times when she had custody of the children she worked as a waitress, a barmaid and as a laborer in a shirt factory. At trial, however, Amy Grace testified that she could not support all three children but that she was willing and able to provide for the youngest, Betty Jo.
Furthermore, evidence was adduced that the wife frequently left the children with either their maternal or paternal grandmother without informing the latter individuals as to where she was going. On two occasions she also left the children in the care of a babysitter overnight although it is unclear where she went or what she did during these intervals.
The wife admitted that she had had sexual relations with another man during the parties' marriage. However, her affair with this man occurred after she and Billy Stewart were separated and while the children were in his custody. One of the twin daughters also testified that her mother slept with a man in her presence. The second twin, Nan, stated that her mother had occasionally left them with other persons and that they (the children) did not know where she had gone. The child also said she had seen her mother smoking "pot" (marijuana) as well as selling it. The latter charge was denied by Amy Grace. Mrs. Grace did, however, admit to smoking marijuana on occasion and also to having taken some amphetamines "to stay awake" while running an all-night cocktail lounge. She said that she did not smoke the marijuana in her children's presence and that she did not take amphetamines while they were in her care.
Both daughters testified that they loved their parents very much. Nan stated that she would prefer to live with her father while Ann said she would be happy living with either her mother or her father.
The husband presented a number of character witnesses who testified to his "good" reputation while stating that his ex-wife's reputation was "bad." These persons also gave testimony that the wife left the children unsupervised and playing near a highway *Page 1034 
while she worked as a waitress at a nearby cafe. In addition, two social workers were called on the husband's behalf, and they testified that the husband had provided a good home for the children while they were in his care. On the other hand, one of the workers stated that the wife's care of the children had not been good and that she (the wife) had resisted the worker's efforts to counsel her. Amy Grace, however, indicated that her hostility toward the worker was the result of the fact that when the latter contacted her, she (the worker) told Mrs. Grace that there had been charges made that Mrs. Grace was a prostitute.
Billy Stewart also called the coordinator of the drug abuse program for the East Central Mental Health Center in Troy, Alabama as a witness in support of his petition for modification. This woman testified that she had counseled Mrs. Grace on one occasion about drug abuse and had scheduled additional appointments for her. She continued by stating that Mrs. Grace did not return to keep these appointments. The necessity for counseling the wife in regard to drug abuse arose from the fact that she was admitted to a hospital because of a drug overdose. Mrs. Grace testified that she had taken an overdose of valium in an effort to commit suicide. She stated that when she took the valium she was depressed over marital difficulties with Jimmy Grace, who was her husband at the time of the trial.
The evidence presented at trial demonstrated that Jimmy Grace was a fugitive from the law and that Amy Grace no longer planned to live with him or remain his wife.
Although numerous, the aforementioned allegations and events do not exhaust the charges and disparaging evidence which was presented against the wife at the trial. However, we feel no useful purpose would be served by examining other such evidence in this opinion.
In her defense the wife testified that she had never intentionally mistreated her children or deprived them of the things necessary for their care and sustenance. She said that she loved her children and said that since the twins would be happier with their father, she was willing for the court to grant him custody of the two older daughters. She requested only that she be allowed to keep the youngest daughter, Betty Jo. Mrs. Grace said that Billy Stewart had not seen Betty Jo in a number of months and that the little girl hardly knew him as a father. Amy Grace concluded her testimony by stating that Betty Jo was very important to her and that she (Mrs. Grace) would care for her and provide for her happiness and comfort.
We held in Stewart v. Stewart, Ala.Civ.App., 354 So.2d 816
(1977) that upon presentation of a petition for modification, the burden is on the moving party to convince the trial court that the circumstances on which the original decree was based have changed to such a degree that a modification of the award of custody is required. We have also said that where the trial court sees and hears the parties and witnesses testify, the presumption is that the trial court's judgment is correct. Moreover, on appeal to this court, we will not revise the trial court's judgment unless we determine from the evidence that it is plainly and palpably erroneous. Morrow v. Morrow, Ala.Civ.App., 351 So.2d 923 (1977).
After a careful reading of the record on appeal, a portion of which was set out above, we are convinced that the overwhelming weight of the evidence supports the conclusion that the appellant, Billy Stewart, is a fit parent to have custody of all three of his children and that the welfare and best interests of these children would be properly served by placing them in his custody. The trial transcript contains very little evidence which could be deemed to call into question Stewart's fitness as a parent. Indeed, there was nothing derogatory presented against him at trial except his former wife's statements that he drank too much and had not seen his youngest daughter for some period of time. Both of these charges were denied by Stewart, and other witnesses offered testimony in support of his denials. On the other hand, there was substantial — even overwhelming *Page 1035 
— evidence that appellee, Amy Grace, was not a fit and proper person to have custody of any of her children. Consequently, we hold that the trial court's decree awarding custody of the minor child, Betty Jo, to appellee is plainly and palpably erroneous.
The judgment of the trial court is reversed and the cause remanded for entry of a judgment awarding the custody of Betty Jo to the appellant.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.