DONALDSON, Judge.
Bridges Barkley Crawford (“the wife”) has petitioned this court , for a writ of mandamus directing Judge Gilbert Self, circuit judge of the Lauderdale Circuit Court (“the trial court”), to grant her June 22, 2016, motion requesting Judge Self to recuse himself from further presiding over the underlying divorce case between her and Andrew Martin Crawford (“the husband"). The wife contends that, because Judge Self received an ex parte communication concerning the parties from Dr. Janet Womack, the superintendent of the Florence City School System and a non-party to the underlying divorce case, there exists a reasonable basis for questioning his impartiality. For the reasons explained below, we deny the wife’s petition.
Background
According to the materials submitted in support of and in opposition to the petition for a writ of mandamus, the husband filed a complaint for a divorce in December 2015. Custody of the parties’ two minor children, among other things, is at-issue in the divorce proceedings. •
On or about April 25, 2016, the trial court granted the wife’s ex part'e motion for a protection-from-abuse order against the husband. Thereafter, the husband filed a counterpetition for a protection-from-abuse order against the wife. On or about May 4, 2016, and’ pursuant to a stipulation of the parties, the trial court vacated the ex parte protection-from-abuse order, dismissed the husband’s counterpetition, and entered a restraining order purportedly prohibiting either party from contacting the other party. The trial court scheduled a status conference for May 10, 2016.
On May 9, 2016, Judge Self received an unsolicited telephone call at his residence from Dr. Womack inquiring about the status of the protection-from-abuse order. The subject matter of the call also concerned the wife’s alleged communications with teachers, school administrators, and/or adult chaperones who were at that time accompanying students, including one of the parties’ children, on a school trip to Washington, D.C. At. the May 10, 2016, status conference, at which the parties’ attorneys and .the guardian ad litem for the children appeared, Judge Self informed the parties that he had received telephone contact relating .to the case from a nonparty. The parties contest whether Judge Self disclosed at the May 10 hearing the name of the individual who had made the contact. Elizabeth Messer, the wife’s former attorney who appeared at the status conference, testified under oath at the hearing on the motion to recuse that, at the May 10 status conference, Judge Self did not inform the parties of the name of the person who had called him. However, Carla Maples, one of the husband’s attorneys, and Kerri Berryhill, the guardian ad litem, testified under oath at the same hearing that Judge Self made it clear at *1112 the status conference that Dr. Womack was the individual who had called him. Judge Self stated in open court at the hearing on the motion to recuse:
“[T]he first thing I did with the attorneys was tell them, disclosed to them that Dr. Womack had, in fact, the night before contacted me and I thought it was a, you know, pretty benign event.”
On May 10, 2016, the same day as the status conference, the wife filed a notice of intent to serve on Dr. Womack subpoenas for the production of documents and for the taking of Dr. Womack’s deposition upon written questions. On May 12, 2016, Judge Self entered a pendente lite order granting the parties joint physical custody of the children. On May 16, 2016, Dr. Womack, through counsel, filed a motion to quash the subpoenas. In the motion, Dr. Womack stated:
“1. On May 7, 2016, some students of Hibbett Middle School went on a school sponsored field trip to Washington D.C., including the child of the parties to this action.
“2. While the children were on the trip, [the wife] contacted school personnel on the trip and represented that a Court had ordered that [the husband] was not allowed to contact the child and that this Order had been violated by the posting of pictures of her child.
“3. These communications were reported to Dr. Womack, the Superintendent of the Florence City Board of Education. In order to ensure compliance with any Order of the Court, Dr. Wom-ack contacted the Court to inquire whether there was an Order restricting contact between the child and the [husband]. Dr. Womack was informed that there was no such Order currently in effect. In fact, the Court’s Ex parte Protection Order had been dismissed on May 6, 2016, prior to the child leaving for the field trip. [The wife]’s representations about the Court’s Order were not accurate.
“4. As late as Wednesday, May 11, 2016, [the wife] continued to falsely represent to officials from the Florence City Board of Education that the Order entered against the husband was still in effect even though it had been lifted the previous week.”
On May 18, 2016, Judge Self entered an order granting Dr. Womack’s motion to quash the subpoenas.
On June 22, 2016, the wife filed the motion requesting that Judge Self recuse himself. In the motion, the wife stated, in pertinent part:
“On or about May 10, 2016, at a status conference in the above-styled case, the Court informed the parties that he had been contacted ex parte by a person who called him the night before (May 9, 2016) and made disparaging statements about the [wife] to the Court. The Court did not disclose to counsel the name of the person making the ex parte communication, but described in detail allegations made by the person that were disparaging of the [wife].”
Judge Self held a hearing on the motion to recuse on July 12, 2016. The hearing was transcribed, and the parties have provided this court with the transcript of the hearing. At the hearing, Judge Self confirmed that he had received a telephone call from Dr. Womack on May 9, 2016. Judge Self provided the following details concerning the telephone conversation:
“Dr. Womack ... never said anything derogatory about anyone. She didn’t say anything derogatory about [the wife], [the husband, or] anyone involved. [Dr. Womack] had two inquiries: One, whether there was a [proteetion-from-abuse order] in place which I was going by memory. Let me back up. She called and was aware of the pretrial set for whatev *1113 er day that was .... [B]ut she had an order that identified for her that there coincidentally was going to be a pretrial [on May 10, 2016,] in this case. She wanted to know whether there was a [protection-from-abuse order] in place, and going by memory, I didn’t think there was because it had been I think by agreement a mutual retraining order that [had been entered on the] previous Friday but was going to check on it and, two, I think the purpose of her call was that [the wife], by [Dr. Womack’s] understanding from parents and chaperones that were on the Washington, D.C,, trip, ... had called several times and or had texted several times either teachers or administrators or parents in place and ... Dr. Womack, who as I recall I told everyone in the room it was Dr. Womack who called ..., is the superintendent of education. She asked me to ask [the wife’s attorney] if she would, please, ask of her client to kind of relax the calling, let’s say, because it was a distraction. They had one more day left in Washington, D.C. Seems like it was a Tuesday and they were coming back on Wednesday. Again this is all by memory and [she] asked me to ask [the wife’s attorney] if she would kind of say something to [the wife],that everything was fíne and that if she needed to call feel free, but for the most part if she could relax the calling. It was a distraction to some of the teachers and administrators there. She went on to say that it seemed—it’s something to the effect it seemed to be triggered—the calling seemed to be triggered by—-when they were posting Facebook postings, I’m guessing, of a certain individual that would be near the children in some of these Facebook postings. And the human in me, the person in me as often times in these divorce cases I was really—it provoked sympathy [for the wife] because I wrongfully, inaccurately jumped to the conclusion that there must be a paramour or somebody on that trip. She never said anything like that but, you know, unfortunately a lot of times when a divorce reaches the inside of a courtroom it’s usually stuff like that and I wrongfully in my head thought well, God. I don’t blame [the wife] calling if, you know, I’m just thinking, you know, thinking to myself.
“So, one, your motion suggesting that Dr. Womack said anything derogatory about anybody, she didn’t and, two, it certainly didn’t prejudice me against [the wife]. In fact, it was kind of just the opposite. Not that I was prejudiced against [the husband]. I just kind of remember feeling a little sympathetic. I bet you there’s a wife or somebody up there that’s involved in this somehow and maybe that’s triggering some response from [the wife] back here in Florence. You know, that’s kind of how that went forward. Wasn’t a very long conversation. I deal with Dr. Womack on occasion primarily during the jury system in jury weeks when the Florence City System ..., we will communicate briefly if there’s going to be school out or weather reports or snow because it’s my policy to follow the school system’s help to excuse kids.”
Messer, the wife’s former attorney, testified that Judge Self stated at,the status conference that someone affiliated with the “school board” had contacted him about the case by telephone but that she was not made aware that it was Dr. Womack who had called Judge Self. Under questioning by the wife’s current attorney, Messer stated:
“Q. And did Judge Self make any statements about his impression about [the wife] after that phone call?
“A: He did express concern about her mental stability.
*1114 “Q, What did he say in that regard?
“A. I don’t recall exactly, you know, what-it-was, that there was concerns that she was not mentally stable.
■ “Q. Did he reference a need for her to get any counseling or any type evaluation?
“A, I 'don’t remember whether he said evaluation. I know he did express great concern about her mental stability.

il

“Q, Do you recall the Court disclosing the name of. the person that contacted him?
“A. I do not; that’s the reason that I subsequently filed my—I actually—it was not on ■ the 16th. I actually filed those on the 10th, the day—actual day of the hearing. I filed a notice of intent to serve a subpoena on [Dr.] Womack. Those were just—they’re basically interrogatories because it’s a third party. It’s written deposition. In an attempt to find out the name of the person who had, in fact, contacted the Judge and just to find out more information about what happened on' that trip that was—warranted a phone call directly to the Judge.
“Q. Judge Self indicated that he found your deposition upon written questions to be' I believe—let me find the word.
“THE COURT: Fishing expedition, harassing.
“Q. Marginally—
“THE COURT: Marginally ridiculous.
“Q, Thank you. Judge. Did you propound those questions to harass anybody?
“A. No. My only sense was that there had been an outside communication with the Court and it obviously had been significant enough that the superintendent -of schools felt it necessary to contact the Judge. I later learned it was the superintendent. I did not know when I filed these. I simply askéd, I mean, I thought that they were very Straightforward questions just asking who was on ' the trip, what the ■ chaperones’ names were,

U

'“Q. ... If "you' had knowii who the caller was who notified the Court, would there be any need to go into that detail of discovery that yóú engaged in' on May [10]th, 2016? '
“Á. I probably would’ve still asked him questions because il do feel like as an attorney that if there is a witness or anyone [who has]‘provided information to the Court, that my client was entitled to cross-examine that person and disclose what this person had, I don’t know if I would have done exactly what I filed had I known who it was. It probably wouldn’t have been as long but I probably would’ve still had some discovery questions and would’ve done deposition even through writing or in person just because I needed to protect my client’s right to cross-examination.”
Regarding Messer’s testimony concerning the-wife’s mental stability, Judge Self stated:
“I don’t remember making any comments about the stability—mental stability of [the wife]. If I did, you have to recall. I’d already met with [the wife] privately in [regard to a protection-from-abuse order] and she persuaded me against my normal standard operating procedure to grant j&e [protection-from-abuse order]. There was nothing— there was nothing said to me from Dr. Womack or from that evening that would have caused me any pause with regards to the mental stability of [the wife].
«
“,.. [I]f I shared something about her stability, it would’ve been the result of my personal, ex parte but legal con *1115 tact with her, you know, that, I guess was on April 28th and not as a result of anything that had come from Dr. Wom-ack because Dr. Womack as I’ve repeated myself time and time again, had nothing derogatory to say about anybody.”
Maples testified that she did not recall Judge Self commenting on the wife’s mental stability. Berryhill testified that she •recalled that, at the status conference, Judge Self had referred only to the wife’s frightened demeanor in relation to when the wife had appeared before Judge Self in April 2016 in support of her request for an ex parte protection-from-abuse order.
On July 13⅛ 2016, Judge Self entered an order denying the wife’s motion to recuse. The -wife filed a petition' for a writ of mandamus to this court on July 27, 2016. This court called for an answer, which the husband filed on August 22, 2016.
Standard of Review
“A petition for the writ of mandamus is the usual method by which to seek review of a trial judge’s denial of a recusal motion. See Ex parte Crawford, 686 So.2d 196, 198 (Ala. 1996) (holding that a trial judge’s .denial of a recusal motion can be challenged on appeal or in a petition for a writ of mandamus). ‘A writ of mandamus is, an extraordinary remedy, and it will be “issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’ Ex parte P&H Constr. Co., 723 So.2d 45, 47 (Ala. 1998) (quoting Ex parte United Service Stations, Inc., 628 So.2d 501, 503 (Ala. 1993)). ‘The burden of proof is on the party seeking recusal.’ Ex parte Cotton, 638 So.2d 870, 872 (Ala. 1994), abrogated on other grounds by Crawford, 686 So.2d at 198.”
Ex parte Dooley, 741 So.2d 404, 405 (Ala. 1999).
Discussion
In her mandamus petition, the wife contends that, by receiving the ex parte communication from Dr. Womack, Judge Selfs impartiality may reasonably be' questioned and that, therefore, she is entitled to a writ of mandamus directing Judge Self to enter an order recusing himself from the divorce case.
“A trial judge’s ruling on a motion to recuse is reviewed to determine whether the judge exceeded his or her discretion. See Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala. 2003). The necessity for recusal is evaluated by the ‘totality of the facts’ and circumstances in each case. [Ex parte City of] Dothan Pers. Bd., 831 So.2d [1,] 2 [ (Ala. 2002) ]. The test is whether ‘“facts are shown which make it reasonable for members of the public, or a party, or counsel opposed to question the impartiality of the judge.” ’ In re Sheffield, 465 So.2d 350, 355-56 (Ala. 1984) (quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982)).”
Ex parte George, 962 So.2d 789, 791 (Ala. 2006).
“The presumption in Alabama is that a judge is qualified and unbiased. Rikard v. Rikard, 590 So.2d 300 (Ala. Civ. App. 1991). The burden is on the moving party to present evidence establishing the existence of bias or prejudice. Rikard. Disqualifying prejudice or impartiality must be of a personal nature and must stem from an extrajudicial source. Ri-kard.”
Zimmerman v. Zimmerman, 655 So.2d 1042, 1044 (Ala. Civ. App. 1995). “‘The alleged bias and prejudice to be disqualify *1116 ing must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.’ ” Medical Arts Clinic, P.C. v. Henry, 484 So.2d 385, 387-88 (Ala. 1986)(quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).
Pursuant to Canon 3.A.(4), Alabama Canons of Judicial Ethics, “[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte communications concerning a pending or impending proceeding.” “Ex parte communications are those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter.” James J. Alfini, Steven Lubet, Jeffrey Shaman, and Charles Gardner Geyh, Judicial Conduct and Ethics § 5.02, 5-2 (4th ed. 2007).
Although “a private interview or conversation between a judge and a witness or non-party (where interests which might be affected by such conduct are not represented) could be deemed an impropriety and worthy of criticism,” Stewart v. Stewart, 354 So.2d 816, 820 (Ala. Civ. App. 1977), a showing that such an ex parte communication has occurred, without more,.might not be sufficient to require a trial judge’s disqualification. The party seeking the trial judge’s recusal must present sufficient evidence showing that the trial judge has been biased or prejudiced by the ex parte communication “such that ‘a reasonable person knowing everything that the [trial] judge knows would have a “reasonable basis for questioning the [trial] judge’s impartiality.” ’ ” S.J.R. v. F.M.R., 984 So.2d 468, 472 (Ala. Civ. App. 2007)(quoting Ex parte Bryant, 682 So.2d 39, 41 (Ala. 1996), quoting in turn Ex parte Cotton, 638 So.2d 870, 872 (Ala. 1994)). See also Canon 3.C.(1), Alabama Canons of Judicial Ethics (“A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned .... ”); and Medical Arts Clinic, P.C., 484 So.2d at 387 (holding that when a trial judge receives an ex parte communication, the evidence must be “sufficient to show bias or prejudice so as to disqualify the trial judge”).
“Attorneys usually realize that it is improper to initiate ex parte communications with a judge regarding a case that is presently pending before him, but the same is not necessarily true of members of the general public, who may pick, up the telephone and try to call a judge regarding such a matter or send him a letter. In fact, it .is not at all uncommon for a judge to receive calls or letters from the public—particularly in a high-profile case. Judges should do whatever they can to prevent such inadvertent ex parte communications from occurring, and should endeavor to disregard such communications when they inadvertently receive them. But the mere fact that an unsolicited ex parte communication has taken place does not ordinarily warrant judicial disqualification—much less reversal of any decision rendered by the challenged judge. This is true a fortiori where the ex parte communication was received by the judge after he rendered that decision.
“There are sound reasons for not mandating judicial disqualification on the basis of a judge’s inadvertent receipt of letters or telephone calls. For one thing, [if] the rule is otherwise—and a judge were to be‘disqualified from presiding over a proceeding merely because he received a letter from a party or someone else who is interested in a matter pending before that judge—few *1117 cases would ever be resolved. At some point, however, a judge’s receipt of unauthorized communications about a case may so affect his impartiality, or the appearance of that impartiality, that he would be duty bound to recuse. This is so, a fortiori, where the inadvertently contacted judge has voluntarily elected to respond to such communications.”
Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 14.5.5, pp. 395-97 (2d ed. 2007)(footnotes omitted).
When a trial judge receives an ex parte communication, “prompt disclosure of the ex parte communication to all affected parties may avoid the need for other corrective action.” Elfin et al., Judicial Conduct and Ethics § 5.05, at 5-22. However, “[wjhere irremediable prejudice has occurred, of course, disclosure will not be sufficient to avoid disqualification or reversal.” Id. at 5-23.
In the present case, neither party contests that the telephone conversation between Dr. Womack and Judge Self, in substance, related to the underlying divorce case. Neither the parties nor their attorneys were present when the communication occurred. Therefore, the telephone conversation between Dr. Womack and Judge Self constituted an ex parte communication between a nonparty and the trial court stemming from an extrajudicial source. This court, therefore, must determine whether, under the applicable standard, the wife has presented sufficient evidence to establish that a reasonable person would conclude that the ex parte communication has caused Judge Self to be biased or prejudiced.
The wife relies on S.J.R., 984 So.2d 468, for the unquestionable proposition that an ex parte communication with a nonparty can have an impact' on the trial judge’s impartiality. In S.J.R., the parties were involved in a postdivorce dispute concerning custody of their minor child. At some point in the litigation, the trial judge appointed a counselor for the child. The mother of the child filed a petition for a writ of mandamus arguing that the trial judge should be ordered to recuse himself from the- case because he had intentionally engaged in ex parte communications with the counselor throughout the course of the litigation. This court determined that “the trial judge has not only ordered that the counselor communicate only to the trial judge, excluding both parties involved in the custody dispute, but the trial judge has also entered a pendente lite order based upon the counselor’s recommendation.” 984 So.2d at 472. This court held that the evidence established that the trial judge’s ex parte communications with the counsel- or were such that his impartiality might reasonably be questioned. Id. Thus, this court issued a writ of mandamus ordering the trial judge to recuse himself from further proceedings in the case. Id.
However, this court has also addressed instances where ex parte communications between a trial judge and a nonparty did not automatically result in a finding that the trial judge was biased or prejudiced or that the perception of the trial judge’s impartiality was impacted. In Stewart, 354 So.2d 816, the trial judge in a child-custody case between two parents engaged in a conversation with an investigator outside the courtroom after the investigator had testified in the case. 354 So.2d at 820. The father contended that the trial judge and the investigator had discussed matters pertaining to the case and that the father had been denied the right to cross-examine the investigator concerning the discussion. The mother argued that, to the extent that the trial judge committed error, the error was harmless,' that the trial judge had allowed the father the opportunity to cross-examine the investigator at a hearing on father’s postjudgment motion, and that *1118 the transcript of that hearing showed that “nothing was discussed by the investigator and the judge that was not covered in the investigator’s report.” Id. On appeal, this court held-that
“merely because a judge’s conduct is inappropriate, such conduct is not neees-sarily a sufficient ground for reversal by this court, particularly in the absence of a showing by the complaining party that the action taken by the court was inconsistent with substantial justice or materially prejudiced the complaining party. Rule 45, .[Ala. R. App. P.]. See Kilgore v. State, 263 Ala. 606, 83 So.2d 315 (1955); Isom v. State, 51 Ala.App. 114, 283 So.2d 188, cert. den., 291 Ala. 523, 283 So.2d 194 (1973). Since the petitioner made no such showing in the present case, the trial court’s decree will not be reversed on the basis of the conversation which took place between the trial judge and the investigator .,.
Id.
Here, Judge Self received an unsolicited ex parte communication from Dr. Womack, a nonparty, consisting of an inquiry regarding a protection-from-abuse order and concerning actions of the wife that.allegedly were disruptive to individuals participating in a school trip. One view of the facts, as presented by the wife, is that Judge Self became privy to information that allegedly portrayed the wife in a less than flattering light.
Judge Self, however, stated at the recu-sal hearing that the telephone conversation with Dr. Womack was “[n]ot a very long conversation,” that he occasionally converses with Dr. Womack regarding court-administration issues that impact the school system (e.g., jury duty for parents of students), and that Dr. Womack did not say anything during the telephone conversation disparaging of either party. Judge Self appropriately and promptly, i.e., the following day at the status conference, informed all parties and the guardian ad litem of his telephone conversation with Dr. Womack and reported to them the substance of that conversation. A judge should immediately end any communication when it becomes apparent to the judge that a nonparty has initiated ex parte contact with the judge concerning a case before the judge and such contact is not otherwise permitted by law. From the information contained in the materials submitted in support of and in opposition to the petition for a writ of mandamus, we cannot conclude that the communication was improperly extended. Furthermore, although the information concerning the wife’s alleged actions-regarding the school trip could become relevant later in the divorce case, the wife has made no showing that these alleged facts are of any consequence at the current stage of the litigation. Stated otherwise, the wife has failed to show how she has been materially prejudiced by Dr. Womack’s communication to Judge Self concerning her alleged actions in relation to the school trip. Should it become apparent to Judge Self that the facts relayed to him by Dr. Wom-ack are of consequence later in the litigation; then Judge Self could reevaluate whether to recuse himself from the case.
The wife contends that Judge Selfs order quashing the wife’s subpoenas to Dr. Womack are indicative of his bias and prejudice against her. “Adverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice.” Hartman v. Board of Trs. of the Univ. of Alabama, 436 So.2d 837, 841 (Ala. 1983). The wife has not petitioned this court for a writ of mandamus instructing Judge Self to enter an order vacating his order quashing the subpoenas directed to Dr. Womack; however, we observe that parties should ordinarily be permitted to discover the facts and *1119 circumstances of an ex parte communication to a trial judge.
Under these facts, we conclude that the recusal of Judge Self, although permissible, was not required. Because- the wife has failed to establish a clear legal right to an order of recusal,, she is not entitled to a writ of mandamus.
Conclusion
For the foregoing reasons, the wife’s petition for,a writ of mandamus is denied.
PETITION DENIED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.